Mitchell L. HJERSTEDT, and Marjorie M. Hjerstedt, his wife; and Wisconsin Physicians Service Insurance Corporation, a domestic group health insurance corporation, Plaintiffs-Respondents,†

v.

Robert G. SCHULTZ, individually; Robert G. Schultz, d/b/a Blue Streak Automotive, Inc.; Val-Tec, Inc.; and American States Insurance Company, Defendants,

Charles R. RYAN, and Dale J. Borell, a/k/a William Borell, Defendants-Appellants.

Court of Appeals

No. 82–1349. Submitted on briefs May 16, 1983.— Decided July 19, 1983.
(Also reported in 338 N.W.2d 317.)

---

† Petition to review denied.

For the defendants-appellants the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Richard J. Boyd,* assistant attorney general.

For the plaintiffs-respondents the cause was submitted on the brief of *Jeffrey F. Snyder* of *Remley, Sensenbrenner, Stein, Cummings & Snyder, S.C.* of Neenah.

Before Scott, C.J., Voss, P.J., and Brown, J.

SCOTT, C.J. Wisconsin Department of Transportation engineers Charles R. Ryan and Dale J. Borell appeal from a denial of their motion to dismiss a complaint against them. The complaint was filed as a result of an automobile accident at an intersection that is under their supervision. The sole issue on appeal is whether Ryan and Borell can be held personally liable for their decisions concerning the placement of signs at the intersection where the accident occurred. Because we conclude that

both engineers exercised judgment within the scope of their lawful authority, we reverse.

The southbound exit ramp from Highway 41 to Neenah intersects with North Street, an east-west roadway. At the time relevant to the instant case, stationary stop signs were posted at the intersection for both eastbound and westbound traffic on North Street; no stop sign was posted for traffic on the ramp. In June 1977, Mitchell Hjerstedt was driving on the southbound exit ramp. As he reached the North Street intersection, his car was struck by a westbound vehicle that ran the stop sign. Hjerstedt was seriously injured in the collision.

Hjerstedt filed a complaint against Robert Schultz, the driver of the westbound car. In addition, Hjerstedt filed a complaint against engineers Ryan and Borell, as individuals, alleging that they were negligent in their placement of signs at the intersection. At the close of Hjerstedt's case against the engineers, Ryan and Borell moved for dismissal on the grounds that Hjerstedt had failed to prove that either of them had violated a ministerial duty, and, hence, they were immune from liability. The court took the motion under advisement. At the close of evidence, Ryan and Borell moved for a directed verdict and a dismissal. Their motion was denied. The jury returned a verdict allocating seventy-five percent of the negligence to Schultz, ten percent to Ryan, and fifteen percent to Borell.

The issue before us is whether the trial court erred in denying Ryan and Borell's motion for dismissal of the complaint against them. We conclude that the trial court should have dismissed the complaint.

Under sec. 805.14(4), Stats., "any party may challenge the sufficiency of the evidence as a matter of law by moving for directed verdict or dismissal or by moving the court to find as a matter of law upon any claim

or defense or upon any element or ground thereof."
Section 805.14(1) provides:

No motion challenging the sufficiency of the evidence
as a matter of law to support a verdict, or an answer in
a verdict, shall be granted unless the court is satisfied
that, considering all credible evidence and reasonable
inferences therefrom in the light most favorable to the
party against whom the motion is made, there is no
credible evidence to sustain a finding in favor of such
party.

Ryan and Borell correctly assert that they cannot be
held personally liable for Hjerstedt's injuries unless
Hjerstedt established that they violated a "ministerial
duty" with respect to the intersection where the accident
happened. They argue that none of the evidence intro-
duced at trial demonstrated that either one had breached
such a duty. We agree.

Under the general rule, a public officer is not person-
ally liable to one injured as a result of an act performed
within the scope of his or her official authority and in
the line of official duty. *Lister v. Board of Regents of
the University of Wisconsin System,* 72 Wis. 2d 282, 300,
240 N.W.2d 610, 621 (1976). Numerous public policy
considerations support the rule: (1) the danger of in-
fluencing public officers in the performance of their
functions by the threat of lawsuit; (2) the deterrent
effect which the threat of personal liability might have
on those who are considering entering public service; (3)
the drain on valuable time caused by such actions; (4)
the unfairness of subjecting officials to personal liability
for the acts of their subordinates, and (5) the feeling
that the ballot and removal procedures are more appro-
priate methods of dealing with misconduct in public of-
fice. *Id.* at 299, 240 N.W.2d at 621.

■
An exception to the immunity rule is that an officer is liable for damages resulting from his or her negligent performance of a purely ministerial duty. *Id.* at 300–01, 240 N.W.2d at 621–22. "A public officer's duty is ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Id.* at 301, 240 N.W.2d at 622.

■
In keeping with the public policies that support the rule of immunity for public officials, the Wisconsin Supreme Court has determined that it does not want to give juries the opportunity to second-guess the "reasonableness and safety" of any legally adequate arrangement of signs used to control traffic at an intersection. *Raisanen v. City of Milwaukee,* 35 Wis. 2d 504, 514, 151 N.W.2d 129, 134 (1967). In the absence of a statute or regulation that mandates a sign placement, whether or not to post a stop, warning or yield sign at a given location is a matter that requires the exercise of judgment. *See Dusek v. Pierce County,* 42 Wis. 2d 498, 506, 167 N.W.2d 246, 250 (1969). Even where an official fails to recognize that traffic at a given intersection is hazardous and fails to warn highway users of the danger, the official is not subject to personal liability for his mistake. *See id.* at 505, 167 N.W.2d at 250.

Hjerstedt points out that in *Cords v. Anderson,* 80 Wis. 2d 525, 542, 259 N.W.2d 672, 680 (1977), the supreme court held a park manager personally liable for his failure to recommend that warning signs should be placed along a dangerous path located in a wilderness area belonging to the state. A part of the path was within a single footstep of a one hundred foot dropoff

that was not readily discernible to hikers. The court stated that especially because people were allowed to use the path after dark, the location of the path posed an obvious danger to the public. The park manager admitted that he was aware of the danger. The court held that on the facts of the case, "the duty to either place warning signs or advise superiors of the conditions [was] . . . so clear and so absolute that it falls within the definition of a ministerial duty." *Id.*

Hjerstedt argues that we should view *Cords* as a signal that the supreme court no longer disapproves jury determinations on the reasonableness and safety of the signs that regulate traffic at an intersection. We are not persuaded that we should do so. The *Cords* court was confronted with a very unusual set of facts having nothing whatsoever to do with the regulation of traffic at the thousands of intersections throughout the state. We conclude that an intersection controlled by signs that meet legal requirements does not present a grave and hidden danger of the Cords variety and that juries must still be precluded from second-guessing the discretionary judgments of traffic engineers.

At trial, Duane Dunlap, an expert on highway safety, testified that the North Street intersection would have been safer if the stop signs had been arranged in a different manner and if several "stop ahead" signs had been posted. Dunlap acknowledged that only one of the changes he suggested—the addition of a left-side stop sign for westbound traffic on North Street—might arguably be required by any state or federal regulation. Section Hy 11.03 (2) (c) 4., Wis. Adm. Code[1] provides:

---

[1] Chapter 11 was repealed on December 1, 1979; pursuant to sec. 84.02 (4) (e), Stats., the provisions of ch. 11 have been replaced by the MANUAL OF UNIFORM TRAFFIC CONTROL DEVICES.

Where the visibility of a sign *may be impaired* by stopped buses or other large vehicles, or where the sign must be placed where it will not be visible for at least 250 feet, an auxiliary stop *shall be erected* in either the far-felt or near-left quadrant of the intersection at the standard height and location with respect to distance from both roadways. [Emphasis added.]

Dunlap stated that in his judgment, a bus stopped in the westbound lane on North Street would impair visibility of the right-hand stop sign. He concluded, therefore, that the regulation required Ryan and Borell to have a left-hand stop sign posted on North Street. Both Ryan and Borell testified that in their judgment, a bus in the westbound lane would not impair another vehicle's view of the right-hand stop sign. Accordingly, they had decided that the regulation did not require a left-hand stop sign on North Street.

■
Section Hy 11.03 (2) (c) 4., Wis. Adm. Code leaves room for the exercise of an administrative officer's judgment and discretion. The provision requires a second stop sign only where an official has made the determination that large vehicles may obscure the right-hand stop sign. Ryan and Borell construed the regulation in the course of their official conduct. Even if their judgment that the regulation did not apply to the North Street intersection was mistaken, their exercise of judgment is protected under the immunity rule. *See Lister,* 72 Wis. 2d at 302, 240 N.W.2d at 622.

Beyond the Dunlap testimony, our examination of the record persuades us that Hjerstedt presented no evidence demonstrating that either Ryan or Borell breached a ministerial duty with respect to signs posted at the North Street intersection. Both engineers exercised judgment in their official capacities when they posted one particular arrangement of signs at the intersection

and, at a later time, decided to leave that arrangement unaltered. Consequently, they are immune from personal liability, and the complaint against them should have been dismissed.

*By the Court.*—Judgment affirmed in part; reversed in part.