Julianne K. LARSEN and Dennis Larsen and Dorothy R. Larsen, her parents, Plaintiffs-Respondents and Cross-Appellants,†

v.

WISCONSIN POWER & LIGHT COMPANY, a domestic corporation, Defendant-Appellant and Cross-Respondent,†

Steven MERRIMAN and Roy K. Clary, Defendants-Appellants and Cross-Respondents,

Don LEE, d/b/a Town Inn Motel, Defendant and Cross-Respondent.

Court of Appeals

No. 82–1990. Submitted on briefs December 12, 1983.— Decided August 23, 1984.
(Also reported in 355 N.W.2d 557.)

† Petition to review denied.

For the defendant-appellant and cross-respondent Wisconsin Power & Light Company the cause was submitted on the briefs of *James C. Herrick* and *Bruce A. Schultz,* and *Brynelson, Herrick, Gehl & Bucaida* of Madison.

For the defendants-appellants and cross-respondents Steven Merriman and Roy K. Clary the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *Theodore L. Priebe,* assistant attorney general, and *Waltraud A. Arts,* assistant attorney general.

For the plaintiffs-respondents and cross-appellants Julianne K. Larsen, Dennis Larsen and Dorothy R. Larsen, the cause was submitted on the briefs of *Robert A. Slattery* and *John G. Gehringer* and *Frisch, Dudek and Slattery, Ltd.* of Milwaukee.

Before Gartzke, P.J., Dykman, J. and Gordon Myse, Reserve Judge.

GORDON MYSE, Reserve Judge. This is an appeal and cross-appeal from a judgment finding that the ap-

pellants negligently caused the asphyxiation of Ms. Larsen. We reverse the portion of the judgment finding appellants Clary and Merriman negligent, and affirm the remainder of the judgment as modified.

Ms. Larsen and companions were found unconscious in their room at the Towne Inn Motel in Mauston, Wisconsin. Ms. Larsen was asphyxiated by the space heater installed in her room. The space heater's intake and exhaust were clogged with ice formations which resulted in carbon monoxide flowing into the room. This also resulted in part from the eroded condition of metal sleeves through which carbon monoxide was discharged outside. The eroded sleeves permitted the carbon monoxide to escape through the concrete block walls to the ceiling and back into the room.

The appellant Wisconsin Power and Light (utility) supplied the natural gas for the heater and serviced it. The utility had converted the space heater from propane to natural gas in approximately 1966.

The appellants Merriman and Clary were employed by the Department of Heath and Social Services' (DHSS) Division of Health, in its Hotel and Restaurant Section at the time of the accident. Merriman was the sanitarian for the district including the motel and had inspected the motel. Clary was the chief of the Hotel and Restaurant Section and supervised Merriman's operations.

The utility contends that the trial court erred in instructing the jury that provisions of the administrative code governing heater installation and inspection were safety statutes. Clary and Merriman contend that: (1) the court erred in instructing the jury on the standard of liability applicable to them; (2) the court erred by admitting into evidence a letter written after the accident by Clary to the motel which recommended changes in space heater installation; and (3) they were not liable as a matter of law and public policy. The respon-

dents' cross-appeal asks for prejudgment interest on the award and argues that the trial court erroneously refused to allow amendment of the complaint to provide for punitive damages.

### Appellant Utility

The utility contends that the trial court erred in instructing the jury on Wis. Adm. Code sec. PSC 134.10. It argues that the instruction was redundant and that the regulation and its predecessor rule were not safety statutes imposing any duty of care upon the utility.

The regulation states in part:

> Whenever a gas utility is required to enter a customer's premises to re-establish service to relight applicances [*sic*] due to a non-emergency interruption of service, an inspection of the burner ignition and flame appearance shall be made on each appliance which is relit to check for safety and efficient operation. The utility will be prepared to advise the customer relative to the safety and efficiency of connected appliances.

Wis. Adm. Code sec. PSC 134.10(3)(c).[1] The jury was instructed that "[t]he foregoing legislative enactments are termed 'safety statutes,' and the failure of a utility to comply with a safety standard promulgated by the statute or administrative code provision constitutes negligence."

The instruction was not redundant. While the standard Wisconsin jury instruction—Civil 1002 used by the trial court instructed the jury on general standards of care applicable to the utility, the court's reading of Wis.

---

[1] Prior to April 1, 1977, the Public Service Commission required periodic inspections by the utility at least once every five years. *See In the Matter of . . . Proposed Revision of the Standards for Gas Service*, No. 2–U–594 (PSC December 30, 1976). Instructions to the jury noted this regulation and its applicability.

Adm. Code sec. PSC 134.10(3), illuminated the specific duty placed on the utility for inspection of gas appliances. This was not contained within the standard instruction and its inclusion was necessary for the jury to fully comprehend the duty placed upon the utility.

The utility further argues that the trial court's characterization of Wis. Adm. Code sec. PSC 134.10, as a safety statute is error and that the rule was not intended to place any liability upon the utility. For administrative regulations to be deemed safety statutes,[2] "it must appear that the [regulation] was designed to prevent the kind of harm inflicted and that the person . . . injured was within the class sought to be protected." [Footnote omitted.] *Fleury v. Wentorf*, 82 Wis. 2d 105, 109–10, 262 N.W.2d 68, 70 (1978). Section PSC 134.10(3) provides that the utility is required to make a safety inspection of an appliance each time the customer's service is interrupted and the utility is required to reestablish service. Testimony by a utility employee stated that an inspection was not made when service was interrupted for a non-emergency meter change on April 20, 1977.

A statement made by the Public Service Commission (PSC) in a written revision of standards for gas service suggests that Wis. Adm. Code sec. PSC 134.10(3), was not intended to place liability upon the utility. *See In the Matter of . . . Proposed Revision of the Standards for Gas Service*, No. 2–U–594 (PSC December 30, 1976). The obligation of the utility to make a safety inspection, however, is clearly stated in sec. PSC 134.10(3). Interpretation of a regulation is governed by its language.

[2] Administrative regulations, in addition to statutes, form a basis of liability as safety statutes. *See Nicolai v. Wisconsin Power & Light Co.*, 222 Wis. 605, 269 N.W. 281 (1936) (alleged negligence for failure to conform to administrative order states a claim).

Where its meaning "is clear and unambiguous on its face, then resort to extrinsic aids for the purpose of . . . construction is improper." *State v. Derenne,* 102 Wis. 2d 38, 45, 306 N.W.2d 12, 15 (1981).[3] "[R]eference to . . . [regulative] history cannot be made for the purpose of rendering a [regulation] ambiguous." *Id.* at 45–6, 306 N.W.2d at 15. Section PSC 134.10(3) was intended to prevent this type of accident to motel guests such as the respondent. It imposes a specific duty, the violation of which is negligence. Accordingly, we hold that the trial court's instructions properly stated the duty of the utility to make safety inspections when service is interrupted or an appliance must be relit.

The utility also contends that the trial court erred by instructing the jury on the location of the outside air intake. The court instructed the jury as follows:

You are further instructed that the 1954 Wisconsin Administrative Code required that "all outside air intakes shall be located not less than 2 feet above the outside grade and above roofs and similar areas."

This code provision was in effect at the time the space heater was installed. The utility contends that this language was taken from a provision that applied only to central heating and ventilating systems and was inapplicable to space heaters. *See* Wis. Adm. Code sec. Ind 24.5860 (1954).

The title to Wis. Adm. Code sec. Ind 24.5860 (1954), is "Heating and Ventilation Equipment" which on its face has general application. Portions of the code were

---

[3] Our interpretation of administrative regulations is governed by principles applied to statutory interpretations. *See Basinas v. State,* 104 Wis. 2d 539, 546, 312 N.W.2d 483, 486 (1981) ("[c]onstruction of administrative rules is governed by the same principles that apply to construction of statutes").

applicable to central heating systems only, such as the reference to boiler or furnace rooms contained in sec. Ind 24.5860.7 entitled "outside air intakes for combustion". Other provisions, however, apply generally to "all outside air intakes." *See* sec. Ind 24.5860.4. Nothing in sec. Ind 24.5860 restricts its applicability to central heating and ventilating systems. Space heaters are not explicitly excluded from coverage. The purpose of the requirement that air intakes be placed two feet above grade is to protect against carbon monoxide poisoning fostered by clogged intakes. This purpose is applicable to space heaters as well as to central heating and ventilating systems. We conclude that the trial court did not err in instructing the jury on sec. Ind 24.5860.

Testimony and the language of the instruction made it clear that the applicability of these code provisions was limited by subsequent changes. The jury was advised of the changes and was not misled with regard to the applicability of the code. We do not address the contention of the appellants Clary and Merriman, which was not raised by the utility, that the installation contrary to Wis. Adm. Code sec. Ind 24.5860 (1954) was not causal because had the heater been installed in conformity to the code the accident might have happened sooner. *Cf. Butler v. The State,* 102 Wis. 364, 365–66, 78 N.W. 590, 590 (1899) (argument not raised by counsel will not be considered).

### Appellants Clary and Merriman

Clary was the supervisor of the Division of Hotels and Restaurants within DHSS and Merriman was the division inspector responsible for the district which included the motel. "The general rule is that a public officer is not personally liable to one injured as a result of an act

performed within the scope of his official authority and in the line of his official duty." [Footnote omitted.] *Lister v. Board of Regents,* 72 Wis. 2d 282, 300, 240 N.W.2d 610, 621 (1976). An exception to the immunity accorded public officers is the liability for the negligent performance of "ministerial" acts. This exception to immunity was stated in *Lister,* 72 Wis. 2d at 300–01, 240 N.W.2d at 621–22:

The most generally recognized exception to the rule of immunity is that an officer is liable for damages resulting from his negligent performance of a purely ministerial duty. A public officer's duty is ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion. [Footnotes omitted.]

Because ministerial duties are imposed by law, a determination of what that duty consists of is a question of law and is reviewed here *de novo.*

Application of the standard enunciated in *Lister* is deceptively simple.[4] Not all duties imposed by statute or regulation are ministerial. Nor are all nonspecific duties discretionary. In *Lister,* a University of Wisconsin employee's application of specific statutory standards of student residency to determine whether a student was eligible for state-resident tuition was held to be a discretionary act, so that the employee was immune to liability. 72 Wis. 2d at 301, 240 N.W.2d at 622. Other opinions have held acts discretionary even though they were compelled by law in accordance with certain standards. *See Lifer v. Raymond,* 80 Wis. 2d 503, 510–11, 259 N.W. 2d 537, 540–41 (1977) (determination pursuant to statute of overweight driver's license applicant's reasonable

[4] Prosser found the distinction between discretionary and ministerial acts hazy, and "more or less [an] unworkable distinction." W. Prosser, *The Law of Torts* sec. 132, at 988 (4th ed. 1971).

control over vehicle); *Hjerstedt v. Schultz,* 114 Wis. 2d 281, 287, 338 N.W.2d 317, 320 (Ct. App. 1983) (placement of auxiliary stop signs as specifically directed by administrative code).

In contrast, ministerial duties have been found where performance of the act was not specifically directed by regulation or statute. *See, e.g., Cords v. Anderson,* 80 Wis. 2d 525, 541, 259 N.W.2d 672, 679–80 (1977) (placement of warning sign on public path next to 90 foot drop); *Domino v. Walworth County,* 118 Wis. 2d 488, 492–93, 347 N.W.2d 917, 920 (Ct. App. 1984) (county sheriff's dispatcher's failure to assign investigation of tree fallen across road). These precedents represent an uneasy compromise between protection of discretionary judgments by state officials and compensation of injured parties. Two general principles are deducible: (1) A public officer who has a clear duty to undertake a specific task must do so with reasonable care; and (2) if an official in the exercise of official duties knows of a specific danger, that official must use reasonable care to protect the public from the danger. *Cords,* 80 Wis. 2d at 541, 259 N.W.2d at 679–80.

█

A duty was placed on Merriman by regulation to inspect motel space heaters. *See* Wis. Adm. Code sec. HSS 195.08(2)(a). *See generally* secs. 50.50(8), 50.55, 50.57, Stats. (1981–82). The timing of inspection, and even the decision to inspect this particular heater, was left to the exercise of his discretion. Inspection of the heater was therefore not a ministerial act. Merriman therefore was immune from liability, unless liability is imposed under the "known danger" theory of *Cords.* Merriman did not know of the danger presented by the specific space heater in question. Accordingly, *Cords* is inapplicable to this case. Merriman was immune from liability.

Clary was Merriman's supervisor and was obligated to supervise and train Merriman in regard to space heater inspection. The manner of supervision and training was entirely discretionary. Clary's job description included, among other things, "[s]upervision of section's program of hotels . . . licensure, inspection and evaluation . . . [analysis of] section's operating procedures and . . . staff's reports . . . [inspection of] licensed facilities in company with field staff . . . to evaluate new equipment or procedures" and evaluation of staff performance. This job description imposes no specific duty regarding space heater inspection that could constitute a ministerial duty. Under the second step of our analysis, the "known danger" theory of *Cords,* Clary was unaware of the danger presented by the malfunction of the space heater in question. No duty of reasonable care applied to his supervision, in the absence of knowledge of the danger. Clary therefore was immune from liability. His failure to impose a specific duty upon Merriman, so that Merriman's inspection of space heaters became a ministerial duty, was not contrary to the specific command of a statute, a regulation, or his job description.

In so holding we are mindful of the general mission of the DHSS, stated in sec. 50.57, Stats. (1981–82) :

The department shall . . . administer and enforce the rules and the laws relating to the public health and safety in hotels . . . ascertain and prescribe what alterations, improvements or other means or methods are necessary to protect the public health and safety therein, prescribe rules and fix standards . . . .

This general mandate, however, made neither Clary nor Merriman liable for space heater safety at the Towne Inn Motel. The stated and laudable goal of public safety does not convert the discretionary elements of regulatory

enforcement into a ministerial act for which Clary and Merriman could be held liable.[5]

Even though we reverse that portion of the judgment finding Merriman and Clary liable, a new trial is unnecessary. A jury could reasonably conclude that their actions contributed to the accident. Their immunity, however, precludes judgment against them.

## Respondent's Cross-Appeal

The respondents raise two issues. The respondents ask for preverdict interest despite established precedent to the contrary. *See Johnson v. Pearson Agri-Systems, Inc.*, 119 Wis. 2d 766, 350 N.W.2d 127 (1984) ; *Nelson v. Travelers Ins. Co.*, 102 Wis. 2d 159, 165, 167, 306 N.W.2d 71, 74, 75 (1981). An eloquent argument is made for a change in the law, but this court is bound by prior decisions of the supreme court. *Livesey v. Copps Corp.*, 90 Wis. 2d 577, 581, 280 N.W.2d 339, 341 (Ct. App. 1979).

The respondents also contend that the trial court erred by not allowing them to amend their complaint at the close of evidence to allege punitive damages against the utility. Allowing this amendment was within the trial court's discretion. *Stanhope v. Brown County*, 90 Wis. 2d 823, 834, 280 N.W.2d 711, 715 (1979). The trial court determined that the evidence did not establish a proper case for punitive damages.

Testimony indicated that the utility generally inspected customer heaters, and that the fact of inspection was reported to the PSC. Testimony also established that the utility had no records indicating that an inspection had been conducted at the motel.

---

[5] It is unnecessary to address the propriety of admission of Merriman's post-accident advisory letter to the owner of the Towne Inn in light of our disposition of the public officer's liability.

Unless there is evidence from which a jury could find that the wrongdoer's conduct was "outrageous," the trial court should not submit the issue of punitive damages to the jury.

*Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 298, 294 N.W.2d 437, 457 (1980). The trial court could have considered the evidence insufficient to support a finding of outrageous conduct. It did not abuse its discretion by denying the respondents' motion to amend their complaint.

### Modification of Judgment

The jury apportioned causal negligence as follows:

| | |
|---|---|
| Klosser and Bates | |
| (nonparty heater installer) | 40 percent |
| Wisconsin Power and Light | 20 percent |
| Merriman | 5 percent |
| Clary | 10 percent |
| Stewart Warner Corp. | 0 percent |
| Don Lee, d/b/a Towne Inn Motel | 25 percent |
| Total | 100 percent |

Because the heater installer is not a party, and Merriman and Clary are immune from liability, only two defendants, the utility and Don Lee, are liable on the judgment. The potential for contribution claims between the two liable defendants requires that the judgment be modified so that their aggregate responsibility for the judgment totals 100 percent.

Were the judgment not modified, one defendant would bear a liability resulting from the causal negligence attributed by the jury to the immune and nonparty defendants. This inequitable distribution of damages would be inconsistent with the basic premise of contribution that no defendant should bear "an unequal proportion of the

common burden." *Hartford Fire Ins. Co. v. Osborn Plumbing,* 66 Wis. 2d 454, 460, 225 N.W.2d 628, 631 (1975), *quoted in Ladwig v. Ermanco, Inc.,* 504 F. Supp. 1229, 1238 (E.D. Wis. 1981). The *Ladwig* court distributed the negligence of an immune defendant "among the [other] three [liable defendants] according to their relative percentage share of negligence." 504 F. Supp. at 1239.[6] Analogous recalculation of responsibility among joint tortfeasors for contribution purposes where defendants are insolvent or not joinable has been urged by various commentators. G. Williams, *Joint Torts and Contributory Negligence* sec. 48, at 172 (1951) ; Braun, *Contribution: A Fresh Look,* 50 Cal. St. B.J. 166, 206 (1975) ; Timmons & Silvis, *Pure Comparative Negligence in Florida: A New Adventure in the Common Law,* 28 U. Miami L. Rev. 737, 785–86 (1974).[7]

We follow the lead of *Ladwig,* and redistribute the shares of negligence assigned to the immune and nonparty defendants to the judgment to be entered against the utility and Lee. The 55 percent negligence attributed to the immune and nonparty defendants must be divided according to the proportion of the remaining 45 percent negligence assigned to the utility and Lee. Therefore, the utility is assigned $20/45 \times 55$ percent, and Don Lee is

[6] This conclusion does not alter the injured party's right to full recovery from a joint tortfeasor more negligent than the injured party. *See Chille v. Howell,* 34 Wis. 2d 491, 499–500, 149 N.W.2d 600, 604–05 (1967). The judgment modification affects only contribution rights among the tortfeasors.

[7] This "equitable apportionment" approach was endorsed almost one hundred years ago in Wisconsin for cosureties. "[W]here one of the cosureties has paid the whole debt, he is entitled to contribution from . . . cosureties . . . solvent and within the state. . . . [I]nsolvent and nonresident sureties are simply ignored." *Faurot v. Gates,* 86 Wis. 569, 573, 57 N.W. 294, 295 (1893). *See also Tucker v. Nicholson,* 84 P.2d 1045, 1049 (Cal. 1938) ; Restatement of Restitution sec. 85 comment h (1936).

assigned $25/45 \times 55$ percent. The modified judgment, with the relationship among the liable defendants re-calculated to reach 100 percent, is as follows:

| | |
|---|---|
| Wisconsin Power and Light: | 44.44 percent |
| Don Lee, d/b/a Towne Inn Motel: | 55.56 percent |
| Total | 100.00 percent |

This does not substitute the judgment of this court for the jury's findings. Instead, the shares of liability of the liable defendants, in the proportion to each other set by the verdict, are converted mathematically to figures which total 100 percent. The responsibilities of the remaining parties, relative to each other, are not changed, and a retrial of issues already addressed by the jury is avoided.

*By the Court.*—Judgment modified, and, as modified, affirmed.