C.L., Plaintiff-Appellant-Petitioner,

v.

Donald L. OLSON, Defendant,

Donald HOHLSTEIN, Defendant-Respondent.

Supreme Court

*No. 85–1807. Argued March 1, 1988.—Decided April 27, 1988.*

(Also reported in 422 N.W.2d 614.)

For the plaintiff-appellant-petitioner there was a brief by *Robert Anker Christensen* and *Christensen & Kenney,* Madison and oral argument by *Robert Anker Christensen.*

For the defendant-respondent the cause was argued by *Daniel S. Farwell,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

LOUIS J. CECI, J. This case is before the court on review of a published decision of the court of appeals[1] affirming a decision of the circuit court for Dane county, Angela B. Bartell, circuit judge, ordering

---

[1]*C.L. v. Olson,* 140 Wis. 2d 224, 409 N.W.2d 156 (1987).

summary judgment in favor of the defendant, Donald Hohlstein (Hohlstein). The issue presented for review is whether the court of appeals correctly determined that parole agent Hohlstein is immune from liability as a public officer for allegedly negligent conduct in allowing the parolee, Donald L. Olson (Olson) to operate a motor vehicle or in failing to impose restrictions upon Olson's operation of the vehicle. We affirm the decision of the court of appeals.

The essential facts of this case are undisputed. In 1979, Olson was convicted in the Columbia county circuit court under sec. 940.225(2)(e), Stats. (1979–80),[2] of having had sexual contact and sexual intercourse with two individuals between the ages of 12 and 18, for which he was sentenced to two terms of four years, to be served concurrently. In both incidents, a vehicle had been involved in the abduction of the victims. Olson was released on parole on April 23, 1982, and placed under Hohlstein's supervision. In accordance with his responsibilities under Wis. Admin. Code sec. HSS 328.04(2)(d), Hohlstein established and provided to Olson a copy of the rules of supervision. Hohlstein granted Olson permission to operate vehicles. The only restriction placed upon Olson's operation of vehicles was set forth in his parole rules and required that any vehicle he was operating not be equipped with a device capable of monitoring police, fire or emergency communications.

On October 16, 1982, Olson had traveled from his home in the city of Columbus to the city of Madison, where he offered a ride to the plaintiff, C.L., who had missed a bus. Olson had stated that he would drive

---

[2]Chapter 308, laws of 1981, amended sec. 940.225(2)(e) to change 18 years of age to 16 years of age.

plaintiff to the Capitol square to connect with another bus. Instead, Olson transported plaintiff toward Columbus and sexually assaulted her. Olson was convicted of two felony counts in connection with his assault of the plaintiff.

The plaintiff filed a complaint, alleging that parole agent Hohlstein negligently permitted Olson to operate motor vehicles or negligently failed to impose restrictions upon his operation of vehicles. Defendant Hohlstein moved for summary judgment on the ground that he was immune from liability for his conduct as a public officer because his action involved the exercise of discretion. The trial court granted the motion. The court of appeals affirmed the order of the trial court. We agree with the conclusion of the court of appeals that Hohlstein is immune from liability but, to the extent that our analysis differs, we do not completely embrace the rationale applied by the court of appeals in arriving at this result.

■■■■

In reviewing an order granting summary judgment, we apply the same standards set forth under sec. 802.08(2), Stats., as do trial courts. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). First, the court examines the complaint to determine whether a claim for relief has been stated. *Id.* Only if a claim has been stated does the court then proceed to determine whether the pleadings, depositions, answers to interrogatories, admissions, and affidavits demonstrate a genuine issue as to any material fact. *Id.* This court has previously stated that, "The objection of an officer's civil immunity, affecting as it does his substantive liability for damages, is properly presented by a demurrer on the ground that the complaint fails to state a cause of action." *Lister v. Board of Regents,* 72 Wis. 2d 282, 299,

240 N.W.2d 610 (1976). Consequently, because we determine, for the reasons set forth below, that Hohlstein was immune from liability for the activity alleged in the complaint, we find that the complaint fails to state a claim upon which relief may be granted and proceed no further.[3]

Upon release by parole, a paroled individual remains in the legal custody of the Department of Health and Social Services and is subject to conditions and rules of parole. Section 57.06(3), Stats. The Wisconsin Administrative Code sets forth with greater particularity the nature of the supervision of the parolee which must be maintained:

> "HSS 328.04 Field supervision. (1) Parole and probation supervision is a mechanism of control and an attempt to guide offenders into socially appropriate ways of living. Field staff are to provide individualized supervision of clients in a manner consistent with the goals and objectives of this chapter. Specifically, field staff are to attempt to help the client be successfully reassimilated into the community, help the client adjust to and cope with community living, reduce crime, and protect the public.
>
> "(2) An agent shall abide by the department's administrative rules. An agent's responsibilities upon receiving a client for control and supervision shall include:
>
> * * *
>
> "(d) Establishing written rules of supervision that are supplemental to existing court-imposed or

---

[3]While we agree with the decision of the court of appeals that the order of the trial court granting summary judgment was proper, we disagree with the finding of the court of appeals that a claim for relief was stated. *C.L.,* 140 Wis. 2d at 227.

parole board conditions, and providing the client with a copy of them;

"(e) Informing the client of the possible consequences of not abiding by the rules and conditions of supervision;

"(f) Explaining the conditions and rules of supervision and the reporting requirements immediately upon reception to field supervision in a manner the client can understand;

\* \* \*

"(3) When probation or parole begins, an agent shall meet with a client to review or develop written rules and specific conditions of the client's supervision, or both."

Among the parole rules which are particularized under the administrative code is the following, which requires that the parolee "[o]btain advance permission from an agent to purchase, trade, sell, or operate a motor vehicle." Section HSS 328.04(3)(h). It is parole agent Hohlstein's allegedly negligent decision to grant permission to Olson to operate the motor vehicle for which the plaintiff seeks to hold Hohlstein responsible for damages. Whether Hohlstein would be immune from liability if such negligence were established in granting permission to operate the motor vehicle requires a review and the application of principles of the immunity of public officers and employees.

The immunity of public officers for certain acts undertaken in their official capacities derives from common law. *Lister,* 72 Wis. 2d at 299. The public policy considerations which support the grant of immunity include:

708

"(1) The danger of influencing public officers in the performance of their functions by the threat of lawsuit; (2) the deterrent effect which the threat of personal liability might have on those who are considering entering public service; (3) the drain on valuable time caused by such actions; (4) the unfairness of subjecting officials to personal liability for the acts of their subordinates; and (5) the feeling that the ballot and removal procedures are more appropriate methods of dealing with misconduct in public office." *Id.*

Recently, the purpose and scope of the doctrine of federal official immunity under state tort law was described by the United States Supreme Court as follows:

"The provision of immunity rests on the view that the threat of liability will make federal officials unduly timid in carrying out their official duties, and that effective Government will be promoted if officials are freed of the costs of vexatious and often frivolous damages suits. See *Barr v. Matteo, supra,* 360 U.S. [564] at 571, 79 S.Ct. [1335] at 1339 [1959]; *Doe v. McMillan,* 412 U.S. 306, 319, 93 S.Ct. 2018, 2028, 36 L.Ed. 2d 912 (1973). This Court always has recognized, however, that official immunity comes at a great cost. An injured party with an otherwise meritorious tort claim is denied compensation simply because he had the misfortune to be injured by a federal official." *Westfall v. Erwin,* 108 S. Ct. 580, 583 (1988).[4]

[4]*See also* Restatement (Second) of Torts, sec. 895D, comment b (1979):

"The basis of the immunity has been not so much a desire to protect an erring officer as it has been a recognition of the need of preserving independence of action without deterrence or intimi-

The general rule acknowledged in Wisconsin is that a public officer or employee is immune from personal liability for injuries resulting from acts performed within the scope of the individual's public office. *Lister,* 72 Wis. 2d at 300. However, this general rule of immunity is subject to exceptions, representing a judicial balance struck between "the need of public officers to perform their functions freely against the right of an aggrieved party to seek redress." *Id.* Specifically, the doctrine of immunity affords no protection to a public officer or employee for (1) the negligent performance of a ministerial duty[5] or (2)

dation by the fear of personal liability and vexatious suits. This, together with the manifest unfairness of placing any person in a position in which he is required to exercise his judgment and at the same time is held responsible according to the judgment of others, who may have no experience in the area and may be much less qualified than he to pass judgment in a discerning fashion or who may now be acting largely on the basis of hindsight, has led to a general rule that tort liability should not be imposed for conduct of a type for which the imposition of liability would substantially impair the effective performance of a discretionary function."

[5]The ministerial/discretionary distinction is not one of recent creation, but in fact was articulated in *Druecker v. Salomon,* 21 Wis. 628 (*621), 637 (*630) (1867):

"Wherever the duties of the office are ministerial, any individual injured by the official acts of such officer, or by acts done by him under color of his office, may resort to the courts for redress. Wherever the officer acts in the exercise of a clearly and purely discretionary authority, his determinations partake of the character of judicial decisions. It is sometimes difficult to draw the exact line of distinction between ministerial and discretionary or judicial authority. The same officer may act sometimes in one capacity, and sometimes in the other."

That discretionary, as opposed to ministerial, decisions are to be accorded immunity is rooted on concepts initially set forth in *Marbury v. Madison,* 5 U.S. (1 Cranch) 137 (1803), in terms of

conduct that is malicious, willful and intentional. *See Ibrahim v. Samore,* 118 Wis. 2d 720, 728, 348 N.W.2d 554 (1984) (citing *Lister,* 72 Wis. 2d at 300–02). The ultimate question presented in this case is whether the decision to permit Olson to operate a vehicle was ⟨ of a ministerial or a discretionary nature.

The test which has evolved for the determination of whether a duty is discretionary or ministerial is based upon that articulated in Eugene McQuillin's treatise on municipal corporations. *See Meyer v. Carman,* 271 Wis. 329, 332, 73 N.W.2d 514 (1955) (quoting 18 E. McQuillin, Municipal Corporations, sec. 53.33 at 225 (3d ed.)). The test has remained substantially the same and was described in *Lister* as follows: "A public officer's duty is ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing

limitations upon judicial review of political decisions. *See Druecker,* 21 Wis. at 636–37 (*629–30).

The Restatement (Second) of Torts sec. 895D (1979) similarly describes immunity limited in scope to discretionary acts:

"(1) Except as provided in this Section a public officer is not immune from tort liability.

(2) A public officer acting within the general scope of his authority is immune from tort liability for an act or omission involving the exercise of a judicial or legislative function.

(3) A public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if

(a) he is immune because engaged in the exercise of a discretionary function,

(b) he is privileged and does not exceed or abuse the privilege, or

(c) his conduct was not tortious because he was not negligent in the performance of his responsibility."

711

remains for judgment or discretion." *Lister,* 72 Wis. 2d at 301.

In *Lister,* this analysis was applied to determine whether a public officer charged with the responsibility of determining residency status for tuition purposes was exercising discretion or performing a ministerial duty when making the residency determination. The court determined that the statute setting forth the requirements for residency status "did not prescribe the classification process with such certainty that nothing remained for the administrative officer's judgment and discretion." *Id.* In this regard, the court highlighted the fact that the classification required the administrative officer to consider, before making the classification, several activities of the student.

Subsequent to *Lister,* two cases, *Lifer v. Raymond,* 80 Wis. 2d 503, 259 N.W.2d 537 (1977), and *Cords v. Anderson,* 80 Wis. 2d 525, 259 N.W.2d 672 (1977), were decided on the same day regarding the ministerial/discretionary act distinction. In *Lifer,* the court considered an attempt to hold a state officer liable for negligently licensing a woman to drive who was allegedly too overweight to drive. The court determined that the examiner would be immune from liability, holding:

> "It is crystal clear that any determination by a road test examiner that an applicant for a driver's license was so overweight as to be suffering from a 'physical disability or disease such as to prevent him from exercising reasonable control over a motor vehicle' involves the exercise of judgment and discretion. The complaint does not allege that the motor vehicle division has promulgated internal rules which establish the maximum pounds permitted per inch of height. Any determination

712

by a road test examiner that by reason of excess poundage a particular applicant was unable to exercise reasonable control over a motor vehicle is entirely an exercise of judgment on his part." 80 Wis. 2d at 510 (quoting sec. 343.06(7), Stats.).[6]

In *Cords,* the same analysis was applied to reach a different result. *Cords* concerned an attempt to hold the manager of a state-owned park liable for injuries allegedly resulting from his negligence in failing to notify his supervisor of a dangerous condition or to recommend the erection of signs warning of such danger. The court discussed the general rule of immunity as presented in *Lister* but found the facts therein to warrant exception to the general rule. Specifically, the court found that:

"There comes a time when 'the buck stops.' Anderson [the public employee] knew the terrain at the

---

[6]See also *Pavlik v. Kinsey,* 81 Wis. 2d 42, 259 N.W.2d 709 (1977), in which the court found both ministerial and discretionary duties to have been alleged. The court, construing a complaint liberally, found ministerial duties to arguably exist in the duties of state employees to follow instructions of the department of transportation regarding, *inter alia,* the construction of a temporary road and the erection of signs. However, the court found allegations of negligence concerning the premature opening of a road before it was adequately lighted and marked with signs to concern discretionary decisions since the allegations referred to "duties which are general in nature and which are not stated to be pursuant to some specific direction of a superior authority." *Id.* at 53. As to the distinction between the discretionary nature of a decision of whether to locate a traffic sign at a particular place and the ministerial nature of the actual placement of signs once the decision has been made, see *Cords v. Ehly,* 62 Wis. 2d 31, 214 N.W.2d 432 (1974); *Chart v. Dvorak,* 57 Wis. 2d 92, 203 N.W.2d 673 (1973); *Dusek v. Pierce County,* 42 Wis. 2d 498, 167 N.W.2d 246 (1969); *Hjerstedt v. Schultz,* 114 Wis. 2d 281, 338 N.W.2d 317 (Ct. App. 1983).

glen was dangerous particularly at night; he was in a position as park manager to do something about it; he failed to do anything about it. He is liable for the breach of this duty." *Cords,* 80 Wis. 2d at 541.

In sum, the court held that "the duty to either place warning signs or advise superiors of the conditions is, on the facts here, a duty so clear and so absolute that it falls within the definition of a ministerial duty." *Id.* at 542.

The plaintiff and defendant perceive of a conflict between *Lifer* and *Cords*[7] and direct the court, for resolution of the conflict, to the decision of the court of appeals in *Larsen v. Wisconsin Power & Light Co.,* 120 Wis. 2d 508, 355 N.W.2d 557 (Ct. App. 1984). In *Larsen,* the court observed as to *Lifer* and *Cords:*

> "These precedents represent an uneasy compromise between protection of discretionary judgments by state officials and compensation of injured parties. Two general principles are deducible: (1) A public officer who has a clear duty to undertake a specific task must do so with reasonable care; and (2) if an official in the exercise of official duties knows of a specific danger, that official must use reasonable care to protect the public from the danger. *Cords,* 80 Wis. 2d at 541, 259 N.W.2d at 679–80." *Id.* at 517.

---

[7]The dissent in *Cords* similarly suggested discordance between *Lister* and the majority opinion in *Cords:* "The court's reasoning appears to be that a duty ordinarily discretionary in nature may become ministerial under certain circumstances. The majority thus abandons the holding of prior case that discretionary and ministerial functions are entirely different, and recognizes, apparently as does Prosser, that the difference is essential [sic] one of degree." 80 Wis. 2d at 557 (citing W. Prosser, Law of Torts, sec. 132 at 987, 990 (4th ed. 1971)).

714

While the result is, in all likelihood, the same, our characterization of the result of the *Cords* and *Lifer* decisions differs from that set forth by the court of appeals in *Larsen*. Specifically, whereas the court of appeals in *Larsen* described the *Cords* analysis of the "known danger" circumstances as a test to be applied to find liability even where an act is the result of a public officer's discretion, an interpretation of *Cords* more consistent with the doctrine of immunity is that a public officer's duty is ministerial where a danger is known and of such quality that the public officer's duty to act becomes "'absolute, certain and imperative ....'" *Cords,* 80 Wis. 2d at 541 (quoting *Lister,* 72 Wis. 2d at 301). Stated otherwise, where a public officer's duty is not generally prescribed and defined by law in time, mode, and occasion, such that "nothing remains for judgment or discretion," circumstances may give rise to such a certain duty where, as in *Cords,* the nature of the danger is compelling and known to the officer and is of such force that the public officer has no discretion not to act.[8] As subsequently explained in

[8]See also *Domino v. Walworth County,* 118 Wis. 2d 488, 347 N.W.2d 917 (Ct. App. 1984), in which the court of appeals determined that a police dispatcher's conduct in failing to reassign a police squad to investigate a report of a downed tree falls within the *Cords* scenario of a known present danger:

> "We are satisfied that the facts of this case fall within the actions contemplated by *Cords* rather than *Lister.* Walworth County argues that [the dispatcher] was required to exercise discretion at various points in time with respect to the event in question. We agree.
>
> However, simply allowing for the exercise of discretion does not suffice to bring the actions under the blanket of immunity provided by sec. 893.80(4), Stats., when the facts or the allegations reveal a duty so clear and absolute that it falls within the concept of a ministerial duty.

*Scarpaci v. Milwaukee County,* 96 Wis. 2d 663, 292 N.W.2d 816 (1980), it is the nature of the specific act upon which liability is based, as opposed to the categorization of the general duties of a public officer, which is determinative of whether an officer is immune from liability. *Id.* at 685.

There would appear to be an additional source of confusion regarding the court's decision in *Scarpaci.*[9] The *Scarpaci* decision concerned the related issues of a medical examiner's decision to perform an autopsy and allegations of misconduct in the manner in which the autopsy was performed. The court noted, with

* * *

[T]he actions of [the dispatcher] were not so discretionary so as to fall within the immunity provisions of sec. 893.80(4), Stats. Rather, [the dispatcher's] duties, under the facts of this case, appear absolute, certain or imperative within the meaning of *Cords.*"

*Id.* at 491–93.

[9]At the outset, it should be noted that *Scarpaci* involved the application of statutory immunity under sec. 895.43(4), Stats. (1977), renumbered by ch. 323, sec. 29, laws of 1979, as sec. 893.80(4). Section 893.80(4) applies to governmental bodies and officers, agents and employees thereof but not to state officials and employees. *See Townsend v. Wisconsin Desert Horse Ass'n,* 42 Wis. 2d 414, 423, 167 N.W.2d 425 (1969). Section 893.80(4) provides immunity for acts made pursuant to the "exercise of legislative, quasi-legislative, judicial or quasi-judicial functions." While sec. 893.80 is inapplicable to the present case, this court has previously noted that, "As applied, the terms 'quasi-judicial or quasi-legislative' and 'discretionary' are synonymous and the two tests result in the same finding." *Lifer,* 80 Wis. 2d at 512. *See also Scarpaci,* 96 Wis. 2d at 683, n. 20. Because the common law discretionary analysis is essentially equivalent to the statutory immunity provided under sec. 893.80, the analysis applied in a case regarding the statutory immunity applies with equal force in decisions rendering application of common law immunity.

716

respect to the decision to conduct the autopsy, that the examiner had the statutory authority to conduct the examination when the medical examiner had reason to believe that death had been due to unexplained or suspicious circumstances, indicating, for example, murder or manslaughter. As to this decision of whether to perform the autopsy, the court observed that the legislature intended the medical examiner to exercise discretion in making a subjective determination. *Id.* at 684–85, 696. Consequently, the court held that such a subjective determination was entitled to immunity under sec. 893.80(4) even if the decision that there was reason to believe that the autopsy should be performed was erroneous. *Id.* at 696. However, the court found that while the medical examiner's action in actually performing the autopsy was discretionary in nature, the discretion exercised was medical, not governmental. *Id.* at 686. Thus, the court concluded that the judgment and discretion involved in the performance of the autopsy did not entitle the medical examiner to immunity under sec. 893.80(4).

In sum, exception to the general rule of public officer immunity exists where the public officer's or employee's duty is absolute, certain and imperative, involving merely the performance of a specific task and (1) the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for the exercise of judgment of discretion, *see, e.g., Lister,* 72 Wis. 2d at 300–01; or (2) there exists a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion, *see, e.g., Cords,* 80 Wis. 2d at 541. Additionally, the doctrine of immunity may be inapplicable

where a public officer's challenged decision involves the exercise of discretion but the discretion exercised is not governmental, *i.e.,* does not require the application of statutes to facts nor a subjective evaluation of the law. *See, e.g., Scarpaci,* 96 Wis. 2d at 686–88; *Protic v. Castle Co.,* 132 Wis. 2d 364, 370, 392 N.W.2d 119 (1986); *Gordon v. Milwaukee County,* 125 Wis. 2d 62, 67, 370 N.W.2d 803 (1985).[10]

The challenged decision in the case at bar concerns parole officer Hohlstein's decision to permit Olson to drive. In support of the position that Hohlstein's decision was not discretionary, the plaintiff refers the court to secs. 343.06, 343.28, and 343.31, Stats. Plaintiff posits that these statutory sections set forth a clear statement of legislative policy that individuals such as Olson, who have been convicted of a felony in which a motor vehicle had been used, should not be issued an operator's license and, if one had been issued, that such license should be revoked. Whatever the application of these statutory provisions might be insofar as the duty of the Department of Transportation is concerned[11] is not a question before

---

[10]Because we are satisfied that the questions presented in the case at bar are resolved by well-established Wisconsin law regarding the doctrine of immunity, we find that examination of decisions from other jurisdictions regarding immunity is unnecessary. Moreover, we find, as did the court of appeals, that the analysis applied in other jurisdictions regarding immunity is unhelpful. *See C.L.,* 140 Wis. 2d at 230–31. We find the following cases cited by the plaintiff inapposite both as to fact and rationale: *Ryan v. State,* 134 Ariz. 308, 656 P.2d 597 (1982); *Mianecki v. Second Judicial Dist. Court,* 99 Nev. 93, 658 P.2d 422, *cert. dismissed* 464 U.S. 806 (1983); *Reynolds v. State, Div. of Parole and Community Services,* 14 Ohio St. 3d 68, 471 N.E.2d 776 (1984).

[11]Section 343.06(11), Stats., provides that the department of transportation shall not issue a license:

the court. What is significant is that these provisions do not in any manner operate to limit the discretion of the Department of Health and Social Services. In fact, the statutory scheme includes some deference to the Department of Health and Social Services under sec. 343.31, Stats., by providing that licenses may be

> "To any person who has been convicted of any offense specified under ss. 940.225 and 944.12 or adjudged delinquent under ch. 48 for a like or similar offense, when the sentencing court makes a finding that issuance of a license will be inimical to the public safety and welfare. The prohibition against issuance of a license to the offenders shall apply immediately upon receipt of a record of the conviction and the court finding by the secretary, for a period of one year or until discharge from any jail or prison sentence or any period of probation or parole with respect to the offenses specified, whichever date is the later. Receipt by the offender of a certificate of discharge from the department of health and social services or other responsible supervising agency shall, after one year has elapsed since the prohibition began, entitle the holder to apply for an operator's license. The applicant may be required to present the certificate of discharge to the secretary if the latter deems it necessary."

There has been no indication in the present case of a finding by the sentencing court that "issuance of a license will be inimical to the public safety and welfare." Lacking such a finding by the trial court, sec. 343.06(11) is inapplicable. Consequently, the period of revocation under sec. 343.31(1)(c) would be limited to one year, which period would have expired prior to the time Olson was paroled. *See* sec. 343.31(3), Stats.

While we do not examine the nature of mandatory revocation to determine whether such revocation under sec. 343.31(1)(c) involves a ministerial or discretionary decision on the part of the department of transportation, it is interesting to note the decision of the United States District Court for the Western District of Wisconsin finding sec. 343.31(1)(c) to involve the exercise of discretion, on the ground that the reference to "felony" under this section is not clearly defined. *Nusberger v. Wisconsin Division of Motor Vehicles,* 352 F. Supp. 515 (W.D. Wis. 1973).

granted or reinstated in certain circumstances upon the recommendation of the department with court approval.[12]

Apart from the arguments concerning ch. 343, Stats., plaintiff asserts that (1) Hohlstein had a clear duty to investigate the advisability of licensing Olson, which he failed to reasonably perform; and (2) had he reasonably performed the duty, he would not have granted permission to Olson to operate a vehicle, given the danger apparent from Olson's use of motor vehicles on prior occasions to transport his female victims to secluded areas before he assaulted them. In support of the contention that Hohlstein should have responded to a "clear danger," plaintiff presents allegations not explicitly alleged in the complaint. Specifically, plaintiff asserts that had Hohlstein abided by the departmental requirement of "maximum supervision" which prescribed monthly home visits, the danger could have been made apparent.[13] Plaintiff

---

[12]Section 343.31(4), Stats., provides:

"Any person denied a motor vehicle operator's license under s. 343.06(11) or whose motor vehicle operator's license was revoked under s. 343.31(1)(i), 1961 stats., prior to October 9, 1963, may be granted such license or reinstated his operating privileges upon recommendation of the department of health and social services or other responsible agency having supervision of the applicant, and approval of the court in which the applicant was convicted of the offense upon which the revocation or suspension was based."

[13]Included within an agent's responsibilities is the evaluation and classification of the client's supervision needs as maximum, medium, or minimum. Wis. Admin. Code sec. HSS 328.04(2)(b). Olson was classified by Hohlstein as needing maximum supervision. There was some question raised by the affidavits submitted in opposition to the motion for summary judgment, and addressed by the parties on appeal, regarding the parole agent's failure to

notes, in support of the imminency of the danger, two incidents. First, plaintiff directs the court's attention to the fact that Hohlstein had been informed by the police of an anonymous report that Olson had been observed in June of 1982 "eyeing" young girls at a tavern. Hohlstein had confronted Olson with this report, but Olson had denied any wrongdoing. Second, the plaintiff notes that at the only home visit made by Hohlstein, on October 12, 1982, four days before the assault, he observed that Olson appeared nervous and had a newspaper article concerning a Dane county rape-murder case spread on his table. Although not specifically alleged in the complaint, because we must construe the complaint liberally on appeal, we have considered these allegations and accept them as true, as reasonable inferences from the facts as pleaded. *See Prah v. Maretti,* 108 Wis. 2d 223, 229, 321 N.W.2d 182 (1982).

comply with the requirements of monthly home visits prescribed under the administrative regulations for individuals under maximum supervision. *See* Wis. Admin. Code sec. HSS 328.04(4)(a). While we have considered the allegations that Hohlstein failed to make monthly home visits insofar as they relate to the grant of permission to drive, we do not consider these allegations as an independent basis of liability. Even liberally construed, the complaint does not support such a distinct theory of negligence. In this regard, we note the dissent of Judge Sundby in the court of appeals, 140 Wis. 2d at 241, which opines that the court of appeals should have considered the question of the alleged negligent supervision regarding the home visits raised in the affidavits as having amended the complaint to include an allegation of a breach of a ministerial duty. As we have discussed above, the methodology applied in Wisconsin regarding summary judgment requires that we first examine only the complaint to determine if a claim for which relief can be granted has been stated. It would be inconsistent with this methodology to examine the affidavits in search of a cause of action.

██

We commence our analysis of this argument under the first part of the above-outlined test by examining the discretionary nature of the decision of a parole agent of whether to grant permission to a parolee to operate a motor vehicle. There is nothing in the regulation which specifies those factors a parole agent should examine in making such a determination. The discretionary nature of the parole agent's decisions under Wis. Admin. Code sec. HSS 328.04 is made apparent in the notes of the appendix to this section:

> "This section states the agent's general and specific responsibilities and provides a means of satisfying them. Stated simply, an agent's responsibility is to help the client to live in a socially acceptable way and to protect the public. This section has been structured to provide sufficient flexibility to allow an agent to treat a client on an individualized basis, applying appropriate rewards and sanctions on the basis of a client's conduct. This section is designed to eliminate the arbitrary exercise of agent discretion while providing for sufficient flexibility to make necessary decisions so as not to tie his or her hands." Wis. Admin. Code sec. HSS 328.04 app.

Stated otherwise, there is nothing in the administrative regulations which describes with any degree of certainty the "time, mode and occasion" of the parole agent's decision of whether to grant permission to the parolee to operate a vehicle.

Having thus determined that a parole agent's decision regarding permission to drive is ordinarily one left to the discretion of the agent, we proceed to consider whether the facts in the case at bar present a

situation similar to that at issue in *Cords,* where an imminent danger is known by the employee or officer to be present and is a danger of such force as to leave nothing to the discretion of the officer. In *Cords,* there could be no subjective determination that could justify the failure to take some action in response to the dangerous condition known by the park manager to be present. However, in the case at bar, the very nature of a parole agent's position involves a subjective and discretionary balance between the danger posed by a parolee and the treatment of the parolee-client. The appendix accompanying sec. 328.04(3) provides: "Subsection (3) notes the permissible subjects for the rules of supervision which should supplement any court imposed conditions. Only those rules necessary to provide for the necessary supervision, treatment, and control of the client and the protection of the public should be imposed." The determination of those rules or conditions of parole which should be imposed involves a process of weighing policies for and against such rules and conditions. Decisions involving this type of evaluation of policies are the precise sort as to which immunity must attach. *See* Restatement (Second) of Torts, sec. 895D, comment d (1979). While in hindsight we may observe that the balance was improperly struck and grieve the tragic consequences, this is not to say that the potential of danger rose to such a degree of probability that, in determining whether Olson should be permitted to drive, nothing was left to Hohlstein's discretion.

The plaintiff has, on appeal, failed to demonstrate that the possibility of recidivism was any more than just that—a possibility. To suggest that the judgment exercised was incorrect or even to posit negligence on the part of Hohlstein, absent a showing that the challenged conduct was ministerial, is to discuss the

type of conduct for which Hohlstein is immune from liability. To impose liability for such conduct would inhibit the exercise of unfettered professional discretion by parole agents and consequently threaten the achievement of the stated goals of reassimilation of the client into the community. The independent judgment of parole agents provided under Wis. Admin. Code sec. HSS 328.04 has been determined to best serve the needs of both the client and the public, and we are not now prepared to judicially strip the professional judgment of parole agents by clothing a discretionary act in ill-fitting ministerial garb. "It is not the function of the court to undertake itself to make the type of policy decision that is better left to the administrative position in which the task is placed." Restatement (Second) of Torts sec. 895D, comment d (1979).

Finally, plaintiff has advanced some argument that the allegedly negligent judgment of the parole agent did not involve governmental discretion, but professional judgment akin to that considered in *Scarpaci*. We disagree. The judgment of the parole officer insofar as the discretionary imposition of rules and conditions of parole are concerned involves a decision-making process more comparable to a medical examiner's decision to perform an autopsy, which in *Scarpaci* was found to constitute governmental discretion, than to judgment exercised in the actual performance of the autopsy, which was found to be excepted from the doctrine of immunity. Like the decision to perform an autopsy, the discretion required of a parole officer requires a subjective evaluation and application of the law to the facts presented in an individual case. While the parole officer is given flexibility in the decisions to be made regarding a

parolee, the framework within which the discretion is to be exercised is administratively regulated. *See, e.g.,* Wis. Admin. Code sec. HSS 328.04 app. (quoted *supra* p. 17).[14] Thus, while professional judgment is implicated in a parole agent's decision, generally, regarding the imposition of rules and conditions of parole and, specifically, regarding the grant of permission to operate a vehicle, the discretion involves the evaluation of public policies within a regulated framework and consequently fundamentally constitutes discretion of a governmental nature.

We determine, for the reasons set forth above, that the plaintiff has failed to allege circumstances warranting exception to the general rule of public officer or employee immunity. Therefore, we hold that the complaint failed to state a claim upon which relief could be granted and proceed no further in our analysis of the propriety of the order granting summary judgment. Consequently, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

STEINMETZ, J. (concurring). I concur in the result reached by the majority. I write only to state that I would not rely, as the majority does, on *Cords v. Anderson,* 80 Wis. 2d 525, 259 N.W.2d 672 (1977). In sum, the holding in *Cords* was that "the duty to either place warning signs or advise superiors of the condi-

---

[14]We note in this regard that there is no allegation that Hohlstein failed to exercise his discretion such as to claim he acted outside his jurisdiction, rather than merely in excess of his jurisdiction. *See Scarpaci,* 96 Wis. 2d at 697. Rather, the focus of the challenged action is upon the negligent exercise of discretion and allegedly erroneous decision to permit Olson to drive.

tions is, *on the facts here,* a duty so clear and so absolute that it falls within the definition of a ministerial duty." *Id.* at 542. (Emphasis added.) I believe that holding in *Cords* was exclusively limited to the facts therein, and is therefore an aberration in the law causing confusion. I would have joined the minority in *Cords* had I been on the court in 1977, which may well have made Justice Connor T. Hansen's dissenting opinion the majority opinion. I especially agree with the dissent's statement of the law as follows:

> "A ministerial duty involves '... the mere performance of a prescribed task ....' *Meyer v. Carman,* 271 Wis. 329, 332, 73 N.W.2d 514 (1955). The duty must be '"positively imposed by law;"' the time, manner and conditions of its performance must be '"specifically designated"'; and the duty of performance must not be dependent upon the officer's judgment or discretion. *Meyer v. Carman, supra,* at 332. The duty must not involve '... the exercise of the officer's judgment upon the propriety of the act, ...' *Stevens v. North States Motor, Inc.,* 161 Minn. 345, 348, 201 N.W. 435 (1925)."

Finally, I believe the dissent was correct in its criticism of the majority opinion that: "The public employee must now discern and fulfill duties inherent in his post, without an objective referent and, apparently, even when his superiors have adopted contrary policies." *Id.* at 557.

*Cords* was not a fact situation in which liability arose from a violation of a ministerial duty, because the duty must "be '"imposed by law,"'" and the time, manner and conditions of its performance must be '"specifically designated."''" *Cords,* 80 Wis. 2d at 557,

citing *Meyer v. Carman,* 271, Wis. 329, 332. Though this may not be the case in which to disavow the holding in *Cords* since it was not briefed, it is likewise not one in which *Cords* should be relied on as authority.

I would therefore concur in the majority's decision.