Rhoda L. JOHNSON, Plaintiff-Respondent,

v.

The MINNESOTA MUTUAL LIFE INSURANCE
COMPANY, Defendant-Appellant.

Court of Appeals

*No. 88-1582. Submitted on briefs May 5, 1989.—Decided July
26, 1989.*

(Also reported in 445 N.W.2d 736.)

For the defendant-appellant the cause was submitted on the briefs of *Thomas J. Sobota,* and *Boardman, Suhr, Curry & Field,* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Robert H. Consigny, John W. Holzhuter* and *Louis D. Gage,* and *Consigny, Andrews, Hemming & Grant, S.C.,* of Janesville.

Before Gartzke, P.J., Dykman and Eich, JJ.

GARTZKE, P.J. Minnesota Mutual Life Insurance Company appeals from an award of summary judgment granted pursuant to sec. 802.08(6), Stats., to Rhoda Johnson for approximately $45,000 in benefits under a supplemental group life insurance policy the company issued to the employer of her husband, Curtis Johnson. We conclude that the company's motion for summary judgment establishes a prima facie defense that Curtis had cancelled his supplemental coverage and that Rhoda failed to show that a trial is necessary or that she is entitled to judgment. We therefore reverse and remand with instructions to dismiss the complaint.

The purpose of summary judgment is to avoid trials if nothing must be tried. *Hunter of Wisconsin, Inc. v. Hamilton,* 101 Wis. 2d 460, 470, 304 N.W.2d 752, 757 (1981). Summary judgment methodology has been described in many cases, such as *In re Cherokee Park Plat,* 113 Wis. 2d 112, 116, 334 N.W.2d 580, 582–83 (Ct. App. 1983), and we need not repeat it. Whether summary judgment should be granted is a question of law which we review *ab initio. Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

We first examine the pleadings to determine whether a claim has been stated and a material factual issue presented. *In re Cherokee Park Plat,* 113 Wis. 2d at 116, 334 N.W.2d at 582–83. Rhoda alleges in her complaint that she is the widow of Curtis, who died on July 27, 1986. Before he died, Minnesota Mutual issued a group policy to his employer insuring his life for $45,000, and a policy of supplemental coverage with benefits of an additional $45,000. She was named beneficiary. Curtis and Rhoda paid Minnesota Mutual premiums for both basic and supplemental coverage. Shortly after his death,

Minnesota Mutual paid her $45,000 for the basic coverage proceeds, but refused to pay the $45,000 in supplemental benefits. Instead, it sent her a check for $110.25 representing a refund of seven months of premiums for the supplemental coverage that it claimed had been collected as an oversight. Rhoda alleges she is entitled to the $45,000 in supplemental benefits. The complaint states a claim. In its answer, Minnesota Mutual denies knowledge or information sufficient to form a belief as to the facts alleged in the complaint. The answer raises material issues of fact.

■

Because Minnesota Mutual moved for summary judgment dismissing the complaint, we examine its affidavits for facts admissible in evidence to determine whether it made a prima facie case for a defense which would defeat Rhoda's claim. *In re Cherokee Park Plat*, 113 Wis. 2d at 116, 334 N.W.2d at 583.

The company's motion is supported by an affidavit of James Lodholz, an employee of the Wisconsin department of employe trust funds ("the department"). Lodholz states that on November 11, 1985 the department received a form signed by Curtis stating he wanted to cancel his supplemental life insurance coverage. Curtis retired from state employment on December 6, 1985. The department mistakenly deducted the monthly premiums for the supplemental insurance from his retirement benefits from January 1986 through July 1986,[1] forwarded the withheld amounts to Minnesota Mutual

---

[1] Section 40.70(8), Stats., provides that cancellation is effective at the end of the calendar month which begins after the employee files a waiver of coverage with the appropriate office. Since Curtis filed his cancellation form with his employing office on October 29, 1985, the cancellation was effective at the end of November 1985. Rhoda does not, however, dispute Lodholz's

to cover the premium on the supplemental coverage, and failed to give Minnesota Mutual notice of the cancellation until August 1, 1986.

Minnesota Mutual also submitted an affidavit by William Schiefelbein, Jr., its general agent in Madison. He furnished copies of the group life insurance policy Minnesota Mutual had issued to the state of Wisconsin and the cancellation form Curtis had signed. The policy provides in material part that Minnesota Mutual,

> in consideration of the acceptance of this policy by the Group Insurance Board of the State of Wisconsin and the payment of premiums as stated herein, hereby agrees to insure certain employes of the State of Wisconsin who are or become entitled to insurance under the administrative rules and the terms and conditions of this policy and agrees to pay the amount for which any employe is insured hereunder at the date of his death to the person or persons entitled thereto after receipt of due written proof of such death, in accordance with and subject to the provisions of this policy.
>
> . . ..
> Premiums shall be computed as hereinafter provided and are payable by the Policyholder. Premiums shall become due on the first day of the month while the policy is in force.

The cancellation form is dated October 29, 1985, and purports to be signed by Curtis Johnson and to have been received the same day by his employing office, the department of administration. The form bears a November 11, 1985 time-stamp by the department of employe trust funds. Schiefelbein states that on August 4, 1986 his office received the cancellation form from the depart-

statement that the mistaken deduction of premiums began in January 1986.

ment of employe trust funds. On August 14, 1986 his office received a claim for benefits from Rhoda. Minnesota Mutual paid her the full amount of the basic coverage. To correct the erroneous payment of premiums for the cancelled supplemental coverage, the company issued a check to her for $110.25, covering the premiums for January 1986 through July 1986.

Whether Minnesota Mutual has established a prima facie defense turns on the effect of sec. 40.70(8), Stats., and the relationship between Curtis as a covered employee, the department and Minnesota Mutual.

Section 40.70(8), Stats., provides that an insured state employee

> may at any time cancel the life insurance by filing a waiver of coverage with the employing office. An insured retired employe may at any time cancel the life insurance by filing a waiver of coverage with the office of the retirement system. The waiver shall be transmitted immediately to the department. The waiver shall be effective and the insurance shall cease at the end of the calendar month which begins after the waiver is received by the appropriate office.[2]

The trial court concluded that sec. 40.70(8), Stats., makes the department, as the group life policyholder for state employees, the insurer's agent to receive cancellation notices. The court also found "compelling evidence" that the department is the insurer's agent by "practice for procuring and administering" the group policy. Because the insurer, through the department as its agent, continued to withhold premiums seven months after receiving the cancellation, the court concluded that

---

[2]The "department" is the department of employe trust funds. Sec. 40.02(19), Stats.

Minnesota Mutual waived its right to cancel coverage. We disagree.

The policy itself shows on its face that the policy-holder is the group life insurance board. This is consistent with sec. 40.03(6)(a)1., Stats., which provides that the group insurance board shall contract with insurers for group insurance plans. Minnesota Mutual is, of course, the insurer, and Curtis is the insured, presumably by virtue of sec. 40.70(1), which provides generally that "each eligible employe of an employer shall be insured under the group life insurance provided in accordance with [ch. 40, subch. VI]." The question remains whether the department is nevertheless the agent of Minnesota Mutual to receive cancellation notices. We conclude it is not.

Whether an actual principal-agent relationship exists usually turns on facts concerning the understanding between the alleged principal and agent. *Soczka v. Rechner,* 73 Wis. 2d 157, 163, 242 N.W.2d 910, 913 (1976). The relationship exists "only if there has been a manifestation by the principal to the agent that the agent may act on his account, and consent by the agent so to act." *Restatement (Second) of Agency* sec. 15 (1957). No such manifestation or consent can be inferred from the facts stated in the affidavits supporting Minnesota Mutual's motion for summary judgment.

One may also be the statutory agent for another. The question is therefore whether sec. 40.70(8), Stats., creates that relationship between the department and the group life insurer. Since sec. 40.70(8) does not expressly denominate the department as the agent and no other statute expressly creates that relationship, we examine the statutes regarding group life insurance to

determine whether that relationship can or should be implied. This is a question of statutory construction, a matter which we decide without deference to the view of the trial court. *Richards v. Young,* 145 Wis. 2d 322, 324, 426 N.W.2d 117, 118 (Ct. App. 1988). We conclude that the relationship cannot be implied from the statutes.

Each eligible employee of an employer participating in the Wisconsin retirement system is generally insured under the group life insurance provided in accordance with ch. 40, subch. VI, Stats. Sec. 40.70(1)(a). Enrollment is automatic, since it takes effect unless the employee executes and files with the department a written waiver. Sec. 40.70(1)(b).[3] In either event, whether the employee is enrolled is a matter of law turning on the act or inaction of the employee, requires no act by the department, and has nothing to do with its relationship to the insurer.

An employee who has filed a waiver or whose group life insurance is terminated by cancellation may become an insured if the employee furnishes evidence of insurability satisfactory to the insurer. Sec. 40.70(6)(a), Stats. The department has no statutory function in that postwaiver enrollment.

The department's only function with respect to enrollments is under sec. 40.70(7), Stats. Under that statute, an employee is deemed to have filed a waiver if during the six months after becoming eligible the employee makes no required contribution toward premiums. If the contributions were omitted because of

[3]Section 40.70(1)(b), Stats., provides that the group insurance board may provide a different method of enrollment, but our search of published regulations of the group insurance board has revealed no different method of enrollment and none appears of record.

employer error and the employee files with the department a written request to withdraw the constructive waiver, coverage is effective when the department receives the request. In that event, coverage exists as a matter of law, requires no act by the department, and has nothing to do with its relationship to the insurer.

Similarly, under sec. 40.70(8), Stats., cancellation of a policy is effective at the end of the month which begins after the employee's waiver is received by the appropriate office. Cancellation therefore occurs as a matter of law, requires no act by the department, and has nothing to do with its relationship to the insurer. Indeed, the date the department receives the cancellation is irrelevant to the date cancellation occurs. Sec. 40.70(8) provides that "the insurance shall cease at the end of the calendar month which begins after the waiver is received by the appropriate office," which in context must be the employing office or the office of the retirement system. We conclude that neither sec. 40.70(8) nor any other statute called to our attention makes the department the actual agent of the insurer for the purpose of receiving notice of cancellation of group life insurance by an employee.

We conclude that nothing in the affidavits supporting summary judgment or in the statutes establishes that actual agency exists between the department and Minnesota Mutual. We turn to the trial court's conclusion that the department is the apparent agent of Minnesota Mutual, and that Minnesota Mutual is therefore estopped from denying coverage.

While the basis for the apparent agency conclusion is not clear, the trial court appears to have based it on the "practice for procuring and administering the group life insurance policy." In this state an apparent agency

750

arises on proof of (1) acts by the agent or principal justifying belief in the agency; (2) knowledge of such acts by the parties sought to be held; and (3) reliance on the apparent agency consistent with ordinary care and practice. *Larkin v. Johnson,* 67 Wis. 2d 451, 457, 227 N.W.2d 90, 94 (1975).

The acts described in the affidavits supporting the motion for summary judgment and prescribed by statute are insufficient to justify a belief that the department is the apparent agent of Minnesota Mutual. As we have pointed out, enrollment in the group life insurance program is automatic, unless the employee executes and files with the department a written waiver. Sec. 40.70(1)(b), Stats. The department's only function with respect to enrollments is under sec. 40.70(7). Cancellation also takes effect automatically under sec. 40.70(8) once the employee's waiver is received by the appropriate office.

The department's actions after it receives the cancellation are irrelevant. Whether or not the department's issuance of a certification of insurance estops the department, that issuance cannot estop Minnesota Mutual unless apparent agency exists for some other reason. The transmittal of premiums to Minnesota Mutual was an act by the department, and receipt and retention by Minnesota Mutual was an act by the company. Neither act clothes the department with any apparent authority other than to collect and forward premiums. We conclude there is no basis in the statutes or Minnesota Mutual's affidavits to support the proposition that the department is Minnesota Mutual's apparent agent.

■■

Because the insurer, Minnesota Mutual, had no knowledge until August 4, 1986 that Curtis had cancelled his supplemental coverage, its receipt and retention of

premiums remitted to it by the department have no legal significance. For those reasons, a ruling that Minnesota Mutual waived its right to cancel has no basis in the affidavits supporting the company's motion for summary judgment.

We conclude that Minnesota Mutual has established a prima facie defense: that Curtis cancelled his supplemental coverage before his death.

We next examine Rhoda's affidavits and other proof submitted in opposition to Minnesota Mutual's motion for summary judgment. We do so to determine whether a genuine issue exists as to any material fact, or reasonable conflicting inferences may be drawn from undisputed facts which requires a trial. *In re Cherokee Park Plat,* 113 Wis. 2d at 116, 334 N.W.2d at 583. Since the trial court granted summary judgment to her, we also determine whether she has made a prima facie case for judgment in her favor.

We conclude that nothing in the affidavits and other proof submitted in opposition to Minnesota Mutual's motion for summary judgment controverts any of the material facts supporting that motion. The opposing affidavits and proof do not establish that Minnesota Mutual manifested to the department that the latter may act on the company's behalf or that the department consented so to act. Nor do the opposing affidavits and proof describe acts by Minnesota Mutual or the department which would suffice to establish apparent agency. Nothing in the opposing affidavits or proof controverts the company's claim that it had no knowledge until August 4, 1986 that Curtis had cancelled his supplemental coverage before his death. Consequently, the opposing affidavits and proof disclose no reason to question

752

the conclusion that the company had not waived its right to consider the coverage cancelled.

We hold that the trial court erred when it granted judgment to Rhoda and failed to grant judgment dismissing the complaint against Minnesota Mutual.

*By the Court.*—Judgment reversed and cause remanded with instructions to dismiss the complaint.