ENVIROLOGIX CORPORATION, a foreign corporation, Plaintiff-Appellant,

v.

CITY OF WAUKESHA, WISCONSIN, a municipal corporation, SEC Donohue, Inc., f/k/a Donohue & Associates, Inc., a Wisconsin corporation, C.D. Smith Construction, Inc., a Wisconsin corporation, Applied Technologies, Inc., a Wisconsin corporation, and J.F. Ahern Co., a Wisconsin corporation, Defendants-Respondents.†

Court of Appeals

*No. 93–2096. Submitted on briefs September 15, 1994.—Decided March 1, 1995.*

(Also reported in 531 N.W.2d 357.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Paul M. Erspamer*, of *Jastroch & LaBarge*, of Waukesha.

On behalf of the defendant-respondent, City of Waukesha, the cause was submitted on the brief of *John P. Higgins*, of *Stilp and Wells* of Milwaukee.

On behalf of the defendant-respondent, SEC Donohue, Inc., the cause was submitted on the brief of *Hugh N. Anderson,* of *Wickwire Gavin P.C.* of Madison.

On behalf of the defendant-respondent, Applied Technologies, Inc., the cause was submitted on the brief of *Donald P. Gallo* and *Thomas J. Basting, Jr.* of *Michael, Best & Friedrich* of Milwaukee.

Before Brown, Nettesheim and Snyder, JJ.

NETTESHEIM, J. Envirologix Corporation appeals from a summary judgment dismissing its complaint against the City of Waukesha, SEC Donohue, Inc. and Applied Technologies, Inc. (ATI). In its complaint, Envirologix challenged the City's award of a contract for the providing of waste water treatment equipment to another party which had submitted a higher bid. The trial court held that the City, Donohue

281

and ATI were immune from suit pursuant to the governmental immunity provisions of § 893.80(4), STATS.

We affirm the trial court's dismissal of Envirologix's action against the City. However, we conclude that the summary judgment evidentiary record does not support the trial court's further holding that Donohue and ATI were "agents" of the City within the meaning of § 893.80(4), STATS. We therefore reverse the dismissal of Envirologix's claims against Donohue and ATI. We remand for further proceedings consistent with this decision.

## FACTS

The facts underlying this case are not in dispute. Envirologix manufactures waste water treatment equipment. In 1991, the City formally solicited bids for the expansion of its waste water treatment plant at a projected cost of $36.5 million dollars. The City retained Donohue as its consulting engineer regarding the project. Donohue, in turn, retained ATI as its subconsultant. In due course, the City selected C.D. Smith Construction, Inc. as the general contractor for the project. J.F. Ahern Co. was selected as the mechanical subcontractor.[1]

Donohue prepared the specifications for the project. The general construction contract between the City and C.D. Smith, the general contractor, provided that substitute "or equal" equipment could be accepted only if the contractor provided sufficient information for Donohue to determine that the equipment was equivalent or equal to that specified. The contract gave

---

[1] It is not clear from the parties' briefs whether J.F. Ahern Co., as a subcontractor, was selected by the City or by C.D. Smith Construction, Inc., the general contractor.

Donohue sole authority to approve or reject proposed substitute equipment, and it gave the City the right to require the contractor to furnish a bond or surety with respect to any such substituted equipment.

Donohue's specifications included the use of a digester gas mixing system manufactured by Infilco Degremont, Inc. or an "equal" product. Envirologix and Infilco each submitted a bid for this equipment. Envirologix's bid was $150,000 lower than Infilco's. J.F. Ahern, the mechanical subcontractor, and C.D. Smith, the general contractor, proposed that Donohue approve Envirologix's bid as substitute "or equal" equipment for the Infilco equipment specified. After evaluation, ATI recommended to Donohue that Envirologix's proposal be rejected. Donohue did so, stating that Envirologix's equipment did not conform to the specifications and that Envirologix had not submitted test data regarding the experience of the proposed equipment. On August 31, 1992, the City and Donohue formally advised C.D. Smith that the Envirologix substitution request was rejected. They instructed C.D. Smith to proceed with the project using Infilco's equipment instead of Envirologix's.

On September 2, 1992, C.D. Smith asked Donohue to reconsider the substitution request. In a letter to C.D. Smith dated September 11, 1992, Donohue again denied the request, explaining that Envirologix's equipment was not "equal" to that designated in the specification. Specifically, Donohue advised that Envirologix's proposal: (1) did not conform to the technical specifications for the project, and (2) did not include sufficient information demonstrating that Envirologix had relevant operating experience in providing the specified equipment.

## TRIAL COURT PROCEEDINGS

On September 14, 1992, Envirologix filed this action against the City, Donohue and ATI alleging tortious violations of state and federal procurement regulations, tortious interference with contract and defamation to its business reputation.[2] Envirologix sought declaratory judgment, injunctive relief and monetary damages. The next day, the court granted Envirologix an ex parte temporary restraining order barring the defendants from continuing with any further installation of the gas mixing equipment. The order also scheduled a future hearing as to whether Envirologix should be granted a temporary injunction pending further proceedings in the case.

Before the temporary injunction hearing was held, the City filed a motion for dismissal and a supporting memorandum of law contending that Envirologix's complaint failed to state a claim upon which relief could be granted. Specifically, the City alleged that Envirologix had failed to comply with the notice and claim procedures of § 893.80, STATS. In conjunction with this motion, the City also filed an affidavit of the City's record custodian stating that Envirologix had not previously filed any notice of claim pursuant to the statute.

On October 5, 1992, the trial court conducted the temporary injunction hearing. At the conclusion of this hearing, the court denied Envirologix's request for a

---

[2] Envirologix also named C.D. Smith and J.F. Ahern as defendants. The judgment of dismissal, however, travels only to the City, Donohue and ATI. Nonetheless, Envirologix named C.D. Smith and J.F. Ahern as additional respondents on this appeal. Neither has filed a respondent's brief. Our decision travels only to Envirologix's claims against the City, Donohue and ATI.

temporary injunction and dissolved the temporary restraining order. The court then ordered the parties to file briefs regarding the City's pending motion to dismiss.

In response, the City filed a supplemental brief, raising, for the first time, an immunity defense pursuant to § 893.80(4), STATS. Donohue and ATI joined in this theory of defense, filing a joint motion to dismiss and supporting brief claiming that they were "agents" of the City within the meaning of the immunity statute. Envirologix filed its brief responding to the various issues, including the immunity defense. In addition, Envirologix filed an affidavit bearing on the immunity issue and cited to the affidavit in its brief.

Relying solely on the immunity defense, the trial court dismissed Envirologix's claims against the City, Donohue and ATI. Envirologix moved for reconsideration, renewing certain arguments it had already made and raising new issues. After reconsidering its decision, the court confirmed its original decision granting summary judgment to the City, Donohue and ATI.[3]

## APPELLATE HISTORY

Envirologix appealed from both the original summary judgment and the later order confirming the summary judgment. By a prior order, we ruled that

---

[3] A trial court's decision to reconsider is different from the substantive reconsideration itself. Thus, we disagree with Envirologix's notice of appeal and appellate argument which represent that the trial court denied its motion for reconsideration. To the contrary, the court did substantively reconsider its earlier ruling, and then, after such reconsideration, again granted summary judgment to the City, Donohue and ATI. While this is a subtle distinction, it also is more than a matter of semantics.

Envirologix's appeal from the summary judgment was not timely and we dismissed that portion of the appeal. However, we further ruled that the issues which Envirologix presented to the trial court via its reconsideration motion were "new issues" pursuant to *Ver Hagen v. Gibbons*, 55 Wis. 2d 21, 26, 197 N.W.2d 752, 755 (1972). Therefore, we ruled that Envirologix's appeal from the trial court's order confirming the summary judgment was properly before us. The matters which we now address are those which Envirologix raised in its reconsideration motion.

## DISCUSSION

### 1. The Trial Court's Use of Summary Judgment

Envirologix first argues that the trial court improperly considered matters beyond the complaint when addressing the motions to dismiss interposed by the City, Donohue and ATI.

However, § 802.06(2), STATS., permits a trial court to treat a motion to dismiss a complaint for failure to state a claim as one for summary judgment where matters outside of the pleadings are presented to the court.[4] Here, the respondents properly point out that Envirologix itself provided the affidavit of its vice president, Irwin Hess, in response to the various motions to

---

[4] Section 802.06(2), STATS., 1991-92, reads in relevant part:

If on a motion asserting the defense described in f) to dismiss for failure of the pleading to state a claim upon which relief can be granted, . . . matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in s. 802.08, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by s. 802.08.

dismiss. Moreover, Envirologix alluded to this affidavit in resisting the City's immunity argument that its actions were discretionary, not ministerial, pursuant to § 893.80(4), STATS.[5] Thus, Envirologix contributed to the trial court's decision to use the summary judgment methodology contemplated by § 802.06 in a motion to dismiss setting. We hold that the court properly converted the motion to dismiss into one for summary judgment.

## 2. Standard of Review

Here, the trial court decided to substantively reconsider its prior decision. The respondents do not argue that the court misused its discretion by choosing to do so. *See State v. Brady*, 130 Wis. 2d 443, 447-48, 388 N.W.2d 151, 153-54 (1986). Therefore, we do not review the court's substantive ruling on reconsideration under the standard for misuse of discretion. Rather, since the court substantively reconsidered its original grant of summary judgment, we conclude that our standard of review is that which we would apply on direct review of the summary judgment.

We review a motion for summary judgment de novo, using the same methodology as the trial court. *Old Tuckaway Assocs. Ltd. Partnership v. City of*

[5] Envirologix's reply brief does not respond to this argument. Instead, Envirologix argues that an affidavit presented by the City pertaining to the notice of claim issue did not serve to permit the trial court to grant summary judgment on the immunity issue. Because Envirologix's affidavit pertained directly to the immunity issue and thereby permitted the trial court to construe the motion to dismiss as one for summary judgment on that issue, we need not discuss the effect of the City's affidavit on a different issue.

*Greenfield,* 180 Wis. 2d 254, 278, 509 N.W.2d 323, 332 (Ct. App. 1993). Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Section 802.08(2), STATS.

### 3. Claims Against the City of Waukesha

The City asserted its defense of immunity under § 893.80(4), STATS., as against all of Envirologix's claims. The statute reads:

> No suit may be brought against any [governmental entity] . . . or any agency thereof for the intentional torts of its officers, officials, agents or employes nor may any suit be brought against such [governmental entity] . . . or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

This statute clearly immunizes a governmental entity from two categories of behavior by its representatives: (1) intentional torts; and (2) legislative, quasi-legislative, judicial or quasi-judicial actions. *Old Tuckaway Assocs.,* 180 Wis. 2d at 282, 509 N.W.2d at 334. The terms "legislative, quasi-legislative, judicial or quasi-judicial" are synonymous with the term "discretionary." *See Lifer v. Raymond,* 80 Wis. 2d 503, 511-12, 259 N.W.2d 537, 541-42 (1977). Thus, a governmental body is immune from suit when the act complained of is either: (1) an intentional tort, or (2) a discretionary as opposed to merely "ministerial" act. *See id.* The doc-

trine of immunity affords no protection for ministerial acts. *See C.L. v. Olson,* 143 Wis. 2d 701, 710-11, 422 N.W.2d 614, 617 (1988).

To the extent that Envirologix alleges intentional tort conduct as the basis for its action against the City, the statute clearly immunizes the City. Thus, on this different ground, we affirm the trial court's dismissal of Envirologix's tort claims against the City for interference with contract and defamation of business reputation.[6] Therefore, the trial court properly dismissed Envirologix's intentional tort claims against the City.

However, we conclude that there exists a broader basis for dismissing all of Envirologix's claims against the City. If tortious conduct otherwise falls under the ambit of a discretionary act, the governmental entity is nonetheless immune under § 893.80(4), STATS. *Old Tuckaway Assocs.,* 180 Wis. 2d at 283, 509 N.W.2d at 334. We now address whether Envirologix's claims are premised on the City's discretionary acts.

The test for determining whether a duty is discretionary or ministerial has been described as follows:

> A public officer's duty is ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.

---

[6] We also dismiss Envirologix's claim labeled tortious violation of state and federal procurement regulations, although that tort is unknown to us.

*C.L.,* 143 Wis. 2d at 711-12, 422 N.W.2d at 617 (quoted source omitted).

Envirologix contends that the City had a ministerial duty to accept its bid because of the provisions set out in WIS. ADM. CODE ch. NR 162, governing the implementation and administration of financial assistance programs for the design and construction of point source pollution abatement facilities. *See* WIS. ADM. CODE § NR 162.01. Specifically, Envirologix relies on § NR 162.12(6)(c), which states:

> *Experience clause restriction.* The general use of experience clauses requiring equipment manufacturers to have a record of satisfactory operation for a specified period of time or of bonds or deposits to guarantee replacement in the event of failure is restricted to special cases where the recipient's engineer adequately justifies the requirement in writing. When such justification has been made, submission of a bond or deposit *shall be permitted in lieu of a specified experience period.* The period of time for which the bond or deposit is required may not exceed the satisfactory operation period described in any such clause. [Emphasis added.]

Because the language of this provision is cast in mandatory terms ("a bond or deposit *shall* be permitted"), *see id.,* Envirologix concludes that the City did not have the discretionary authority to reject its bid. Instead, Envirologix argues that the City's concerns regarding the experience of the substitute equipment could only be addressed by the City requiring Envirologix to provide a bond or deposit. Thus, pursuant to the administrative code, Envirologix reasons that the City had merely a ministerial decision, and the City was duty bound to accept its bid.

To resolve this issue, we must construe the administrative code and any applicable statutory provisions. The rules of statutory construction apply to the construction of an administrative rule. *State v. Bucheger,* 149 Wis. 2d 502, 506, 440 N.W.2d 366, 368 (Ct. App. 1989). The construction of an administrative rule is a question of law which we review independently. *Id.* at 506-07, 440 N.W.2d at 368. Administrative rules and statutory provisions dealing with the same subject matter are read together and harmonized if possible. *Sommerfield v. Sommerfield,* 154 Wis. 2d 840, 847, 454 N.W.2d 55, 58 (Ct. App. 1990). We reject Envirologix's argument for three reasons.

First: although none of the parties cite to any statutes which apply to a city's bidding procedures, we conclude that the appropriate starting point on this issue is § 62.15, STATS., governing contracts let by a city pursuant to bidding. This statute provides, in part, "**Public works. (1)** CONTRACTS; HOW LET. All public construction, the estimated cost of which exceeds $10,000, shall be let by contract to the lowest *responsible* bidder . . . ." (Emphasis added.) At subsec. (5), this statute states, in part, "The power to reject any and all bids shall exist unless expressly waived."

Our supreme court has held that statutes conferring the power to let contracts to the lowest responsible bidder imply the exercise of discretion. *Aqua-Tech, Inc. v. Como Lake Protection and Rehabilitation Dist.,* 71 Wis. 2d 541, 549, 239 N.W.2d 25, 29 (1976). Moreover, the statutory bid requirements are intended for the benefit and protection of the public, not the individual bidder, and the lowest bidder has no fixed absolute right to the contract. *Id.* at 550, 239 N.W.2d at 29-30.

Given the public policy expressed by the legislature in § 62.15, STATS., we must construe the facially mandatory language of WIS. ADM. CODE § NR 162.12(6)(c) to harmonize with this legislative goal. *See Sommerfield*, 154 Wis. 2d at 847, 454 N.W.2d at 58. On this basis alone, the language of the administrative rule, despite its mandatory ring, must allow for the exercise of discretion on the part of the governmental unit.

Second: an administrative rule may not stand at variance with an unambiguous statute. *Metropolitan Holding Co. v. Board of Review*, 173 Wis. 2d 626, 633, 495 N.W.2d 314, 317 (1993). Therefore, if the statute and the administrative rule are irreconcilable, the rule must yield to the statute which recites the public policy which grants to cities the discretionary authority to reject a low bid in favor of a responsible higher bid.

Third: the principles of statutory and administrative rule construction provide that while the word "shall" is presumed to be mandatory when it appears in an administrative rule, *see Georgina G. v. Terry M.*, 184 Wis. 2d 492, 511, 516 N.W.2d 678, 683 (1994), the word " '[s]hall' will be construed as directory if necessary to carry out the intent of the legislature," *id.* (quoted source omitted). Here, were we to adopt Envirologix's mandatory application of WIS. ADM. CODE § NR 162.12(6)(c), we would undo the legislative intent expressed in § 62.15, STATS.

The summary judgment record unequivocally demonstrates that all the alleged actions of the City pertaining to the rejection of Envirologix's bid were based on the exercise of its bidding discretion. On this

different basis, we affirm the trial court's dismissal of all claims against the City.

### 4. Claims Against Donohue and ATI

Next, we turn to Envirologix's claims against Donohue and ATI. The trial court extended the governmental immunity provisions of § 893.80(4), STATS., to Donohue and ATI, holding that they were "agents" within the meaning of the statute.

Again, we begin with the language of § 893.80(4), STATS. In its opening phrase, the statute addresses the immunity conferred in an intentional tort situation: "No suit may be brought against any [governmental entity] . . . for the intentional torts of its [representatives]." *Id.* We make an important observation about this language which appears to have eluded the trial court: *The immunity conferred by this language is limited to the governmental entity. It does not extend to the governmental representatives.*

In its next phrase, the statute addresses the immunity conferred in a discretionary act situation: "[N]or may any suit be brought against such [governmental entity] . . . *or against its officers, officials, agents or employes* for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions." *Id.* (emphasis added). *In this setting, the immunity conferred by this language travels to both the governmental entity and the governmental representatives.*[7]

---

[7] The court of appeals recently noted this distinction as to the reach of immunity in an intentional tort situation versus a discretionary act situation. *See Old Tuckaway Assocs. Ltd. Partnership v. City of Greenfield*, 180 Wis. 2d 254, 282-83, 509

The trial court's ruling did not address this distinction between the reach of immunity in an intentional tort situation and that in a discretionary act situation. Instead, it appears that the court operated on the assumption that all acts of a governmental agent—tortious or otherwise—are immunized. However, as we have demonstrated, even if Donohue and ATI were agents of the City, the statute does not immunize them from their own intentional torts. On this basis alone, we are required to reverse the court's grant of summary judgment to Donohue and ATI on Envirologix's intentional tort claims.

Moreover, we conclude that the summary judgment record in this case does not support the trial court's conclusion that Donohue and ATI were agents of the City as a matter of law. The critical statement of the trial court on this point was as follows: "[A]lthough [Donohue and ATI] . . . were collectively involved in the determinations of the City, the City had the final say, thus the acts of [Donohue and ATI] were subject to the control of the principal, the Defendant City."

Our difficulty in accepting the trial court's conclusion on this point lies in the meager summary judgment evidentiary record regarding the contractual relationship between the City on the one hand and Donohue and ATI on the other. In fact, the summary judgment record does not even include the parties' written contract, assuming one exists. And, if the contract was oral (a situation we very much doubt), the

---

N.W.2d 323, 333-34 (Ct. App. 1993); *see also Harmann v. Schulke*, 146 Wis. 2d 848, 852, 432 N.W.2d 671, 673 (Ct. App. 1988). The supreme court followed a similar analysis in *C.L. v. Olson*, 143 Wis. 2d 701, 710-11, 422 N.W.2d 614, 617 (1988), albeit in a discussion concerning common law, not statutory, immunity for public officials.

terms of such agreement are not revealed. The most we can glean from the skeletal record on this point is that the City retained Donohue as an engineering consultant to prepare the specifications for the project and to perform the engineering duties called for in the construction contract between the City and C.D. Smith, the general contractor.

We acknowledge that this contract envisions Donohue acting on behalf of the City in certain instances. However, the mere authority to act for another does not, without more, establish agency as a matter of law. Agents and independent contractors both act on behalf of the principal. The critical distinction is the degree of control exercised by the principal. *See* WIS J I—CIVIL 4000, Agency; and WIS J I—CIVIL 4060, Independent Contractor; *see also Arsand v. City of Franklin*, 83 Wis. 2d 40, 43-44, 264 N.W.2d 579, 581 (1978).

We are not certain what evidence the trial court was alluding to when it observed that the City "had the final say" and that Donohue and ATI were subject to the control of the City. If the court meant that the City was not bound by Donohue's recommendations and advice, we would agree. However, this does not necessarily mean that the City was exercising the degree of control over Donohue's actions contemplated by the law of agency. The mere fact that one is entitled to reject professional advice does not, per se, make for a principal-agent relationship.

We speak guardedly here because of the minimal evidence on this point. However, we venture to say that the limited evidence before the trial court on this pivotal question might equally support an argument that Donohue and ATI were independent contractors with the City. Presumably, the City contracted with Dono-

hue so that it could receive Donohue's professional engineering expertise, services and advice both in preparing the general construction contract and in carrying it out. If so, it would logically seem that the City would want Donohue to exercise the full range of its experience and knowledge, rather than dictating to Donohue how it should exercise its professional engineering judgments.

Our musings that Donohue and ATI might be independent contractors are admittedly speculative based on this sketchy summary judgment record. So too, however, is the trial court's conclusion that Donohue and ATI were agents. In short, the evidence is insufficient to sustain either conclusion.

Summary judgment should not be granted unless the moving party demonstrates a right to a judgment with such clarity as to leave no room for controversy. *City of Edgerton v. General Casualty Co.*, 184 Wis. 2d 750, 763-64, 517 N.W.2d 463, 470 (1994), *cert. denied*, 115 S. Ct. 1360 (1995). The determination of whether a principal-agent relationship exists turns on the facts concerning the understanding between the alleged principal and agent. *Johnson v. Minnesota Mut. Life Ins. Co.*, 151 Wis. 2d 741, 748, 445 N.W.2d 736, 738 (Ct. App. 1989). Here, those critical facts concerning the understanding between the City, Donohue and ATI are lacking.

At this early juncture and based on these minimal facts, it cannot be said as a matter of law that Donohue and ATI were agents of the City. Thus, it cannot be said that Donohue and ATI demonstrated with clarity and without controversy that they were entitled to judgment. *See City of Edgerton*, 184 Wis. 2d at 763-64, 517

N.W.2d at 470. We therefore reverse the grant of summary judgment to Donohue and ATI.

We stress the preliminary nature of our decision as it affects future proceedings in the trial court against Donohue and ATI. Our decision is limited to reversing the trial court's agency ruling at this early stage in the proceedings. If the facts as developed at further proceedings or at trial establish that Donohue and ATI were truly agents within the meaning of § 893.80(4), STATS., then the trial court must dismiss any claims based on their discretionary acts. In addition, if the gravamen of Envirologix's tort claims against Donohue and ATI rests on the exercise of their discretionary acts, such claims must also be dismissed. *See Old Tuckaway Assocs.*, 180 Wis. 2d at 283, 509 N.W.2d at 334. Finally, we make no statement as to the substantive sufficiency of Envirologix's claims against Donohue and ATI based on the pleadings and the existing limited evidentiary record.

## CONCLUSION

We affirm the trial court's grant of summary judgment to the City. We reverse the court's grant of summary judgment to Donohue and ATI. We remand for further proceedings consistent with this opinion.

Costs are allowed to the City of Waukesha only.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.