Wayne G. TATGE, Plaintiff-Appellant-Cross
Respondent,†

v.

CHAMBERS & OWEN, INC., Defendant-Respondent-Cross
Appellant.

Court of Appeals

*No. 95–2928. Submitted on briefs December 9, 1996.—Decided
March 13, 1997.*

(Also reported in 565 N.W.2d 150.)

†Petition to review granted.

For the plaintiff-appellant-cross respondent the cause was submitted on the briefs of *Richard R. Grant* of *Consigny, Andrews, Hemming & Grant, S.C.* of Janesville.

For the defendant-respondent-cross appellant the cause was submitted on the briefs of *Fred Gants* and *Erica M. Eisinger* of *Quarles & Brady* of Madison.

Before Dykman, P.J., Roggensack and Deininger, JJ.

DYKMAN, P.J. Wayne Tatge appeals from a judgment granting Chambers & Owen, Inc.'s post-verdict motion to dismiss his claim for negligent misrepresentation and from an order for summary judgment dismissing his claim for wrongful discharge. He argues that Chambers & Owen violated the public policy set forth in § 103.465, STATS., when it fired him for refusing to sign a non-compete agreement. He also argues that Chambers & Owen misrepresented that it would not discharge him for failing to sign the agreement. We conclude that an employer's discharge of an employee for failing to sign an unreasonable non-compete agreement does not give rise to a wrongful discharge claim. We also conclude that a breach of an employment contract is not actionable in tort. Accordingly, we affirm.

Chambers & Owen cross-appeals from the trial court's denial of its motion to remit damages and its alternative motion for a new trial. Chambers & Owen concedes that if we affirm the judgment below, we need not address its cross-appeal. Having affirmed, we do not address the cross-appeal.

## BACKGROUND

Wayne Tatge had been employed by Chambers & Owen since 1981. In early 1993, Chambers & Owen asked Tatge to sign a non-compete agreement which required that, among other things, he not disclose customer data, programs and business practices of Chambers & Owen during or after his employment with the firm. Tatge had objections to the agreement and discussed them with the company's president. He

testified that he asked what would happen if he refused to sign the agreement, and the president replied "nothing." Tatge also discussed job security with the president and testified that the president told him his employment would be ongoing and terminable only for what amounted to good cause. Tatge had not signed the non-compete agreement by April 5, 1993, when Chambers & Owen terminated his employment because he had not signed the agreement.

Tatge brought suit against Chambers & Owen. His amended complaint alleged five causes of action: wrongful discharge, breach of contract, and strict liability, intentional and negligent misrepresentation. Both parties moved for summary judgment. The trial court dismissed the wrongful discharge claim, concluding that the management agreement did not violate Wisconsin's restrictive covenant statute, § 103.465, STATS. It concluded, however, that the breach of contract claim should be tried, as should the misrepresentation claims, but only as to alleged statements that Tatge's employment would be ongoing and that he could be fired only for cause.

The trial was bifurcated. At the end of the first phase, the jury found no contract between Chambers & Owen and Tatge, but determined that Chambers & Owen made a misrepresentation of fact that Tatge was entitled to ongoing employment and termination only for good cause.

During the second phase, Chambers & Owen moved to dismiss the misrepresentation claims. The trial court dismissed the intentional and strict liability misrepresentation claims, but allowed the negligent misrepresentation claim to go to the jury. The jury found for Tatge on that claim, assessed his damages at $250,000, and found him forty percent contributorily

negligent. The trial court dismissed Tatge's negligent misrepresentation claim on Chambers & Owen's post-verdict motions for judgment notwithstanding the verdict, to change answers, and for directed verdict. Tatge appeals.

## WRONGFUL DISCHARGE CLAIM

Tatge argues that the trial court erred in denying his motion for summary judgment on the wrongful discharge claim and dismissing this claim on Chambers & Owen's motion for summary judgment. We review summary judgment motions *de novo* and use the same methodology as the trial court. *Envirologix Corp. v. City of Waukesha*, 192 Wis. 2d 277, 287, 531 N.W.2d 357, 362 (Ct. App. 1995). That methodology is well known and we will not repeat it here. Whether Wisconsin recognizes a cause of action by an employee at-will for wrongful discharge is a question of law. We review questions of law *de novo*. *Kara B. v. Dane County*, 205 Wis. 2d 140, 145, 555 N.W.2d 630, 632 (1996).

In *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 335 N.W.2d 834 (1983), the court adopted a limited exception to the "employment at-will" doctrine, which provides that in the absence of a contract, an employer could fire an employee for any or no reason. *Id.* at 567, 335 N.W.2d at 837. The court said:

> [W]e hold that an employee has a cause of action for wrongful discharge when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law.

> Public policy is a broad concept embodying the community common sense and common conscience. The provisions of the Wisconsin Constitution initially declared the public policies of this state. Each time the constitution is amended, that also is an expression of public policy. *In addition, public policy is regularly adopted and promulgated in the form of legislation.*

*Id.* at 573, 335 N.W.2d at 840 (emphasis added; citation omitted).

Tatge argues that he was wrongfully discharged under *Brockmeyer* because his termination for failing to sign the non-compete agreement was contrary to the public policy set forth in § 103.465, STATS. This statute provides:

> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or thereafter, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any such restrictive covenant imposing an unreasonable restraint is illegal, void and unenforceable even as to so much of the covenant or performance as would be a reasonable restraint.

We agree that § 103.465, STATS., is an expression of public policy. However, that does not necessarily mean that if an employer violates this statute, the *Brockmeyer* public policy exception to the at-will doctrine is triggered, giving rise to a claim for wrongful discharge.

▬

Tatge's argument, although interesting, cannot be correct. Were Tatge correct, all restrictive covenant

cases would become wrongful discharge cases. The "narrow public policy exception" of *Brockmeyer* would become the rule and the at-will doctrine would be swallowed up where employers and employees sign restrictive covenants. Section 103.465, STATS., sets out its own remedy. That remedy is not an automatic wrongful discharge claim for violating the statute. Rather, an overly expansive restrictive covenant is "illegal, void, and unenforceable even as to so much of the covenant or performance as would be a reasonable restraint." When a restrictive covenant is unreasonable, the public policy of Wisconsin is not to create a cause of action, but to void the covenant. Therefore, it is irrelevant whether the unsigned management agreement would have been an illegal restraint on trade. Even were we to conclude that the agreement was an illegal restraint on trade, Tatge would not have a cause of action for wrongful discharge. The trial court did not err by dismissing this cause of action.[1]

## MISREPRESENTATION

After verdict, the trial court signed an order for judgment which reads: "Defendant's motion to dismiss plaintiff's cause of action for negligent

---

[1] Tatge also argues that the trial court improperly read two paragraphs of the management agreement in a way that made the entire agreement not violative of § 103.465, STATS., and that the jury should have decided whether the two paragraphs, read together, resulted in an illegal restraint of trade. We have already concluded that even if the agreement violated § 103.465, Tatge still had no wrongful discharge claim against Chambers & Owen. Therefore, we need not consider this argument. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).

misrepresentation is GRANTED." Tatge and Chambers & Owen differ as to the nature of the trial court's order. We need not determine this, however, because Tatge's brief shows that he considers this issue to be a question of law, as does Chambers & Owen. We decide questions of law *de novo*. *Kara B. v. Dane County*, 205 Wis. 2d 140, 145, 555 N.W.2d 630, 632 (1996).

Tatge contends that Chambers & Owen negligently misrepresented to him that he was entitled to ongoing employment and would be subject to termination for good cause only. He relies on *Colton v. Foulkes*, 259 Wis. 142, 47 N.W.2d 901 (1951), and *Hartwig v. Bitter*, 29 Wis. 2d 653, 139 N.W.2d 644 (1966), to support his claim of negligent misrepresentation. In *Colton*, a contractor breached a contract to properly construct a porch railing. The railing's owner, who had contracted with the construction firm that employed Foulkes to fix the railing, was injured when it broke. The owner sued the contractor and its employees in negligence. The supreme court rejected the contractor's assertion that the owner's only remedy was a breach of contract claim. It concluded that ordinarily, a contract breach is not a tort, but that a contract may create the "state of things which furnishes the occasion of a tort." *Colton*, 259 Wis. at 146, 47 N.W.2d at 903.

Tatge argues that the employment contract setting can be the backdrop for the "state of things which furnishes the occasion" of the tort of negligent misrepresentation. He cites *Hartwig* to support his contention that misrepresentation is a tort action available in the employment setting. In *Hartwig*, a real estate broker induced two real estate salesmen to work for him by misrepresenting that they would earn large

sums of money and that the broker was closing sales "right along." *Hartwig*, 29 Wis. 2d at 655, 139 N.W.2d at 646. The salesmen brought suit against the employer, alleging that they were damaged by the employer's misrepresentations. *Id.* The employer moved to dismiss the complaint because the facts alleged did not constitute a cause of action. *Id.* at 656, 139 N.W.2d at 646. The court rejected the employer's argument, concluding that these facts constituted an actionable misrepresentation claim. *Id.* at 658-59, 139 N.W.2d at 648.

*Hartwig* is distinguishable, however, because there the salesmen were not employees when the broker misrepresented the economic matters upon which they relied. Instead, it was the misrepresentation that induced them to enter the employment relationship. The misrepresentations alleged by Tatge, on the other hand, occurred while he was an employee of Chambers & Owen.

The supreme court was specific in *Brockmeyer* when it said:

> [W]e conclude that a contract action is most appropriate for wrongful discharges. The contract action is essentially predicated on the breach of an implied provision that an employer will not discharge an employee for refusing to perform an act that violates a clear mandate of public policy.

*Brockmeyer*, 113 Wis. 2d at 575-76, 335 N.W.2d at 841 (footnote omitted). We recognize that Tatge's misrepresentation claim does not depend upon the public policy rationale articulated in *Brockmeyer*. But the court in *Brockmeyer* discussed the difference between tort and contract actions in wrongful discharge suits. It concluded that the most significant

difference was in the type of damages allowed and determined that reinstatement and back pay were the appropriate remedies, in part because they were limited by contract concepts of foreseeability and mitigation. Tort actions, limited only by cause and public policy considerations, were rejected. *Id.*

We came to the same conclusion in *Dvorak v. Pluswood Wisconsin, Inc.*, 121 Wis. 2d 218, 358 N.W.2d 544 (Ct. App. 1984), in which a discharged employee argued that a tort action arises out of a bad faith breach of a term employment contract. We stated:

> In order for a cause of action [for wrongful discharge] in tort to exist, a duty must exist independently of the performance of the contract. *Landwehr v. Citizens Trust Co.*, 110 Wis. 2d 716, 723, 329 N.W.2d 411, 414 (1983). According to this test, the existence of a contract is ignored when determining whether alleged misconduct is actionable in tort.
>
> Under the *Landwehr* test, a breach of an employment contract is not actionable in tort. Pluswood's obligation to continue Dvorak's employment existed only because of their contractual relationship. Because no duty was breached independent of the contract, Dvorak's claim is exclusively a contract action.

*Dvorak*, 121 Wis. 2d at 220, 358 N.W.2d at 545.

Tatge asserts that Chambers & Owen told him that he would have continuing employment and that he would only be discharged for cause, and then it discharged him without cause. This is no different from *Dvorak*, in which the employer breached its term employment contract with the employee by firing him. We are bound by *Dvorak's* holding. *See Ranft v. Lyons*,

163 Wis. 2d 282, 300 n. 7, 471 N.W.2d 254, 261 (Ct. App. 1991). We therefore conclude that wrongful discharge is not actionable by a misrepresentation claim.

*By the Court.*—Judgment and order affirmed.